JULIA T. DONOVAN *vs.* ELLA J. WALSH, administratrix.

Suffolk.    November 10, 1920. — April 26, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Frauds, Statute of. Contract,* Implied. *Practice, Civil,* Report, Amendment.

A breach by an owner of real estate in his lifetime of a contract which, by reason of the provisions of R. L. c. 74, § 1, cl. 4, § 6, is unenforceable, affords no ground of action against the administrator of his estate after his death.

A woman, who, in consideration of an oral promise by the owner of certain real estate to "convey to" or to "leave to" her the real estate, took care of the owner and his brother and made a home for them during their lives, cannot maintain an action at law against the administrator of the estate of the owner for the value of the real estate which he had failed to "convey to" her during his lifetime or to "leave to" her by his will.

If the administrator of the owner of the real estate in the circumstances above described repudiates the agreement of his intestate relating to the real estate,

---

the woman may maintain against him an action at law for the value of the services she rendered to the intestate relying on the performance of the agreement. The woman in the circumstances above described brought an action of contract against the administrator of the owner of the real estate, the declaration in which contained four counts, all based upon the agreement to "convey " or to "leave" the real estate to her. After an opening statement by the plaintiff's counsel in which he stated that "the plaintiff was not seeking to recover damages for breach of the oral contract but was seeking compensation for services rendered . . . for which services the plaintiff had received no compensation," the judge "upon the pleadings and opening" ordered a verdict for the defendant and reported the case to this court for determination, it being agreed that, if "the plaintiff should have been allowed to have the case submitted to the jury upon any one or more of the four counts in her declaration upon showing evidence substantially as outlined by counsel in his opening, . . . judgment shall be entered for the plaintiff in" a certain sum; and that, "otherwise, judgment shall be entered upon the verdict." This court, having determined that every count of the declaration was for a breach of the unenforceable contract and that an action could not be maintained thereon, but that, if the declaration were amended to include a count for the value of the services rendered by the plaintiff in reliance upon performance of the oral contract repudiated by the defendant, the action might be maintained, ordered that the plaintiff be given leave to amend within thirty days after rescript by adding a proper count to the declaration in accordance with the opinion, or by changing from law into equity for specific performance, joining with the administrator the heirs at law as parties defendant, upon such terms as the trial court might order, and that thereupon the verdict be set aside and the case stand for trial; but that, if the plaintiff did not so amend, judgment should be entered for the defendant.

CONTRACT, with a declaration in four counts. Writ dated April 18, 1918.

In the first count the plaintiff alleged in substance that the defendant's intestate, David Walsh, promised her that, if she and her husband and family would move from their home in Roxbury to his home in Cambridge and would keep house for, and make a home for him and his brother, Walter, during their lives, he would pay her the sum of $7 per week for the board of his brother and himself, and "would also convey to the plaintiff for a home for herself and family" his land and the house thereon in Cambridge; "that by reason of said promise of the defendant's intestate, the plaintiff, with her husband and family moved from" Roxbury to Cambridge, and kept house for and took care of the defendant's intestate and his brother until the death of Walter on May 30, 1916, and the plaintiff kept house for and made a home for said defendant's intestate until the death of the defendant's intestate on April 9, 1918, in all, for a period of about fifteen years; "and

the plaintiff says that the defendant's intestate did pay said board to the plaintiff but, wholly regardless of his promise, as aforesaid, utterly refused and neglected to convey said land and the house thereon . . . in said Cambridge, to the plaintiff for a home for herself and her family. Wherefore the plaintiff says the defendant's intestate owed her the sum of $5,000, the value of said land and house."

In the second count the same facts were alleged as in the first, except that it was alleged that the defendant's intestate promised that he, besides paying the $7 per week, "would also leave to the plaintiff for a home for herself and her family the land and the house thereon" in Cambridge. The closing words of this count also were: "Wherefore, the plaintiff says the defendant's intestate owed her $5,000, the value of said house and land."

In the third count the plaintiff alleged that "the defendant's intestate owed her the sum of $5,000 according to" an account annexed, the account annexed stating, "For value of real estate promised to be conveyed by or left to the plaintiff by the defendant's intestate, $5,000."

The allegations of the fourth count were that in the year 1902, the defendant's intestate promised the plaintiff that, if she and her husband and family would keep house for and make a home for him and his brother Walter during their lives, he would pay her $7 per week for the board of his brother and himself, "and would further leave to the plaintiff the land and house thereon" in Cambridge; that the plaintiff and her husband and family moved to the house of the defendant's intestate in Cambridge, and the plaintiff there kept house for and took care of the defendant's intestate and his brother until the death of Walter on May 30, 1916, and thereafter kept house for and made a home for said defendant's intestate until his death on April 9, 1918; "that the defendant's intestate did pay board to the plaintiff, to wit:" $7 per week until the death of Walter and $4 per week thereafter, "but paid nothing to the plaintiff for keeping house for and taking care of himself and said Walter; that the defendant's intestate failed and neglected to leave said house . . . to the plaintiff as he had agreed. Wherefore, the plaintiff says that the defendant owes her the sum of $5,000 for services rendered to the defendant's intestate and his said brother Walter."

The action came on to be heard in the Superior Court before *Irwin*, J. In his opening statement to the jury, the counsel for the plaintiff said that the plaintiff "was not seeking to recover damages for breach of the oral contract but was seeking compensation for services rendered by her to said David Walsh and Walter Walsh for making a home for them and for taking care of and nursing them, for which services the plaintiff had received no compensation; . . . that evidence of the value of such services and of the value of the real estate at 207 Prospect Street would be offered but that the plaintiff disclaimed any right to recover as compensation for such services a sum greater than the value of the real estate at 207 Prospect Street, Cambridge, in case the value of the services exceeded that of said real estate."

Other statements by the plaintiff's counsel in his opening are described in the opinion.

At the completion of the opening statement of the plaintiff's counsel and upon the pleadings and opening, the judge ordered the jury to return a verdict for the defendant and reported the case to this court for determination, it being agreed that, if "the plaintiff should have been allowed to have the case submitted to the jury upon any one or more of the four counts in her declaration upon showing evidence substantially as outlined by counsel in his opening, . . . judgment shall be entered for the plaintiff in the sum of $4,000; otherwise, judgment shall be entered upon the verdict."

The case was argued at the bar in November, 1920, before *Rugg*, C. J., *Braley, De Courcy, Crosby, & Pierce*, JJ., and afterwards was submitted on briefs to all the Justices.

*J. A. Daly*, for the plaintiff.

*W. P. Murray*, for the defendant.

BRALEY, J. A verdict for the defendant having been ordered on the opening statement of the counsel for the plaintiff, the inquiry is, what are the facts which the jury would have been warranted in finding on the assumption that all the material statements or offers of proof were true. *Hey* v. *Prime*, 197 Mass. 474. *Ward* v. *Blouin*, 210 Mass. 140.

It appears that David Walsh, the defendant's intestate and a bachelor, owned a parcel of land in Cambridge with a house occupied for many years as a home for himself and his unmarried

brother Walter Walsh. The plaintiff, with whose family the intestate had been intimately acquainted, was employed by him as a bookkeeper until her marriage. In March, 1902, she was living with her husband and child when the intestate "told her in substance that he was dissatisfied with the housekeepers whom he had employed; that his present housekeeper was leaving him and that he wanted the plaintiff to come to Cambridge and make a home for him and his brother Walter; that if she would come and make a home for them and take care of them that the house at 207 Prospect Street would be hers for a home when Walter and he were through with it; that he also said he would allow the plaintiff $7 per week for the board of himself and Walter in addition to his promise to give her the house; that the plaintiff, after getting her husband to consent to this arrangement, agreed to go to Cambridge . . . to make a home for and to take care of them." The plaintiff accordingly removed with her husband and child "and made a home for the two brothers during their lives, in all for a period of about fifteen years; got their meals . . . and cared for and nursed them when they were sick," and the intestate's last sickness "extended over a period of more than three years." The plaintiff or her husband ordered and paid for all interior repairs from 1902 to 1918, the date of the death of the intestate, who survived Walter. The plaintiff on two occasions told the intestate she intended to leave but he persuaded her to stay, saying "that the house and land would be hers." The intestate "paid the plaintiff $7 per week for board" until Walter's death, but from that time until his own death "he paid $4 per week for his board by agreement." But he never stated in what manner he would transfer the title "whether by deed or by will," and died without having made any conveyance or devise, and without any demand therefor having been made. The jury would have been warranted in finding that, in consideration of the intestate's promise, the plaintiff agreed to act as his housekeeper, and to care for him and his brother in sickness and in health so long as either should live, and that the parties intended the contract should be bilateral and entire. The action was seasonably begun, and, the burden of proving payment averred in the answer being on the defendant and no evidence having been introduced, the only remaining defence duly pleaded as matter of law is the

statute of frauds, the ground on which we assume the trial judge ordered a verdict for the defendant. The intestate promised the plaintiff that if she accepted his offer "the house at 207 Prospect Street would be hers for a home when Walter and he were through with it."

While there is no reference to any legal form or mode by which he would make the transfer, the jury could find that it was contemplated and mutually understood that the intestate before his death would in some effectual manner perform his part of the contract. It is settled that without impairment of his or his brother's right of support he could have conveyed or devised the property to the plaintiff conditioned upon her performance which would terminate only upon the death of himself and of his brother. *Pettee* v. *Case*, 2 Allen, 546. *Jenkins* v. *Stetson*, 9 Allen, 128. *Hubbard* v. *Hubbard*, 12 Allen, 586. We discover nothing in R. L. c. 74, § 6, that no agreement to make a will of real or personal property, or to give a legacy or make a devise shall be valid unless in writing signed by the person whose executor or administrator is sought to be charged, which is in conflict with this construction of the contract. The plaintiff, as the jury further could find, fully performed all she agreed to do, and if this appeared, the failure of the intestate, who survived his brother, to vest title in his lifetime or to provide for its vesting at his death, leaving the property to descend to his heirs at law, constitutes a breach. *Jenkins* v. *Stetson*, 9 Allen, 128. *Daley* v. *People's Building, Loan & Saving Association*, 178 Mass. 13, 18. *Morrissey* v. *Morrissey*, 180 Mass. 480. See *Edwards* v. *Slate*, 184 Mass. 317. Even if in the beginning the plaintiff must be presumed to have known that, while not void, yet, the agreement being oral, if the statute was relied on, it could not be enforced, had no reason to anticipate that, having acted in good faith, as the jury also could say, the administratrix, who was not bound to do so, would plead the statute. R. L. c. 74, § 1. *Cook* v. *Doggett*, 2 Allen, 439. *Ames* v. *Jackson*, 115 Mass. 508, 512.

But, although the breach of an unenforceable contract affords no ground of action, *Kidder* v. *Hunt*, 1 Pick. 328, an administratrix can have no greater rights by way of defence than her intestate, the exercise of which must be deemed as being in legal effect the same as if pleaded by him.

The first, second and fourth counts of the declaration resting on allegations of a breach of the contract, are insufficient to support the action. The third count on an account annexed "for value of real estate promised to be conveyed by or left to the plaintiff by the defendant's intestate," is also expressly rested on the contract. See *Massachusetts Mutual Life Ins. Co.* v. *Green,* 185 Mass. 306.

If it were found that the value of the real estate and the value of the plaintiff's services were treated by the parties in making the contract as commensurate, yet recovery can be had solely on the ground that, the contract having been repudiated by the defendant, the plaintiff is entitled only to payment for services actually rendered. *Dix* v. *Marcy,* 116 Mass. 416, 417, and cases cited. *Peabody* v. *Fellows,* 177 Mass. 290, 293. *Kelley* v. *Thompson,* 181 Mass. 122. *DeMontague* v. *Bacharach,* 187 Mass. 128, 133, 134, 135. *Cromwell* v. *Norton,* 193 Mass. 291.

The plaintiff is given leave to amend within thirty days after rescript by adding a proper count to the declaration in accordance with the opinion, or by changing from law into equity for specific performance, joining with the administratrix the heirs at law as parties defendant, upon such terms as the trial court may order; and thereupon the verdict is to be set aside and the case is to stand for trial. G. L. c. 231, §§ 55, 125. *Williams* v. *Carty,* 205 Mass. 396. If, however, the plaintiff does not amend, the entry will be judgment for the defendant.

*So ordered.*