MARGARET DIXON *vs.* F. N. LAMSON & another, executors.

Suffolk.    March 22, 1922. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Contract,* Implied, Performance and breach. *Receipt. Evidence,* Competency.
  *Practice, Civil,* Auditor's report, Instruction to jury.

In an action by a woman against the executor of a will, the declaration contained
  a count upon an account annexed for services rendered by the plaintiff to the
  testator and a count upon a *quantum meruit* for the value of the services rendered.
  At the trial, there was evidence tending to show that the testator had promised
  the plaintiff that if she would remain with him for the remainder of his life
  he would give her "half of what" he had, and that she did so stay.  Subject
  to an exception by the defendant, the plaintiff was asked in direct examination,
  "Whether or not you stayed there in reliance upon his promise to pay you
  in addition to the sums called for in the receipts, such a sum as he promised
  to pay on the occasion that you promised to stay with him?" and she answered,
  "Yes."  *Held,* that the exception must be overruled.
The action above described was tried by a jury upon an auditor's report con-
  taining a ruling of law and upon oral evidence.  It appeared that up to the
  death of the testator the plaintiff had received weekly wages and each week
  had signed a receipt stating that it was "in full of all demands to date."  There
  was evidence tending to show that, importuned by the testator, the plaintiff
  had remained in his employ relying on his oral promise that, if she would do
  so during the rest of his life, he would give her, besides weekly wages, one
  half of all he had, and there was other evidence that he had promised orally
  that, if she would do so, she was to receive by his will money or property suf-
  ficient in amount to provide for her a comfortable maintenance and support
  during the remainder of her life.  The estate left by the testator amounted
  to about $171,000.  The will gave the plaintiff $500.  The defendant, besides
  a general denial, relied upon the statute of frauds.  The jury found for the plain-
  tiff in the sum of $22,833.33.  *Held,* that

(1) The questions, whether any agreement was made between the parties,
  what was the nature of any agreement made and whether or not it was testa-
  mentary in character, were for the jury;

(2) If the jury found that the testator orally had promised the plaintiff
  that, if she remained with him, she was to receive by his will money or prop-
  erty sufficient in amount to provide for her a comfortable maintenance and sup-
  port during the remainder of her life, and that she performed her part of the
  agreement, which was unenforceable by reason of the defendants' reliance
  upon the statute of frauds, the plaintiff was entitled to recover the fair value
  of the services so rendered upon a *quantum meruit;*

(3) While there was evidence from which the jury would have been war-
  ranted in finding that the plaintiff and the testator entered into a contract
  by the terms of which he, in addition to certain weekly payments, promised
  to give her one half of his property for her support and maintenance as long

as she lived if she would stay and take care of him as long as he needed her, and that she fully performed the agreement, it was clear from the character of the verdict that the finding of the jury was not upon such a special contract and was upon a *quantum meruit;*

(4) The receipts given by the plaintiff were not a bar to the maintenance of the action, since the oral agreement as to compensation beyond the weekly wages did not contradict the receipts but related to a distinct and independent contract between the parties;

(5) An instruction by the judge in his charge, that the jury should disregard a ruling of law contained in the auditor's report which was at variance with instructions correctly given by the judge, was without error.

CONTRACT for $85,000 with a declaration in three counts described in the opinion. Writ dated January 15, 1919.

In the Superior Court, the action first was heard by an auditor and, after the coming in of his report, was tried before *J. F. Brown,* J. Material evidence is described in this opinion.

At the close of the evidence, the defendants moved that a verdict be ordered in their favor. The motion was denied. They then asked for rulings, among others the following:

"6. There is no evidence in the case sufficient to warrant the jury in setting aside the findings and conclusions of the auditor relating to the agreement relied upon by the plaintiff.

"7. The receipts given to defendants' testate introduced in evidence are to be regarded not only as acknowledgments of the payment of money, but are also agreements that the money was received in full payment of all demands of the plaintiff against the defendants' testate, and they cannot be varied or controlled by evidence of an oral agreement made previously or contemporaneously inconsistent with their terms.

"8. If there is no evidence in the auditor's report and if no testimony has been introduced outside of the auditor's report which in your judgment is sufficient to meet and overcome the general findings of the auditor, then the general findings of the auditor are conclusive against the plaintiff and she cannot recover in this action."

"11. Upon the evidence in this case the ruling of the auditor that the plaintiff cannot recover under her count on an account annexed or upon *quantum meruit* and that under the circumstances disclosed in this case the law will not imply an agreement, is correct."

"13. No evidence has been introduced and no claim has been

made by the plaintiff to the effect that any of the receipts in evidence were procured by fraud or that there was any mistake on the part of the plaintiff in their execution."

"15. Upon all the evidence in the case the plaintiff cannot recover upon *quantum meruit.*

"16. If you find that there was no agreement between the parties to pay the plaintiff one half of the property, then there is no evidence in the case of any agreement between the parties fixing any definite amount or any specific portion of the property to be paid for plaintiff's services, excepting only the receipts."

The rulings above described were refused except so far as given in the charge. The judge's charge, so far as material, was as follows: "You will have the auditor's report before you, where a great deal of it is set forth, and you have had very able and fair arguments on both sides. Now an auditor's report is something rather more than an ordinary piece of testimony. . . . The rule of the auditor is for him to examine the witnesses, their vouchers, the parties themselves, and it is no part of his duty to make rulings of law. They very often do that in their report and say, 'If the law is this way I find this way; if the law is the other way I find the other way.' But we don't look to auditors for the law; and the auditor in this case, as I understand, in his report has made a mistake in the law. You are not to consider that at all. . . .

"Now you have got to determine from this testimony just what promise was made by Dr. Taylor, if any, and you have got to be pretty careful, because there are a number of conversations that affect the case, depending upon just what the agreement was. Now there must have been an agreement that they both acquiesced in, an offer by one in plain language and accepted by the other one. Now if the promise in this case was to pay one half of his estate if the plaintiff would stay with him so long as she was needed, that is not a contract within the statute of frauds, because that might have been performed within a year. His needs might have been ended, he might have died, he might have been put in an asylum or hospital. Now if that was the contract, then she would be entitled to recover $85,000, whatever you find the half of the estate is.

"Was that the contract? What did she say about it? What

has she said about it? She says here, if I recall it, that what she expected was that she would be provided for in the will, she didn't expect to be paid anything. Now if that was the agreement, to pay her in the will, to leave her in his will the half of his estate, then it is within the statute of frauds and can't be enforced, because the statute does not allow any will to be made except in writing, signed and witnessed, and it doesn't make any promise to make a will or leave any legacy enforceable unless that is signed by the person who makes the promise. If it was a promise to pay her $85,000, in his will, it isn't enforceable. She can't recover on that. If whatever arrangement they had between them was to provide for her, to furnish her a home, to see she would have enough so she wouldn't have to work any more, if that was to be done in his will, then that can't be enforced. . . . It is for you to say, whatever you find the promise he made to her to be. If it was a promise to do anything for her in his will and you think he didn't do enough for her in the codicil he made of $500, then that can't be enforced in any suit at law.

"Then the rule is if she had made an arrangement by which she has given her services, by virtue of any agreement on his part to do something for her in his will, give her $85,000, make her a home, or give her enough so that she could live the rest of her life, then although she can't recover on that, if he has accepted her services, she is entitled to recover on her first count in this declaration, whatever you find those services to have been worth. Now you can't do that unless you find there was some agreement. If there was no agreement, then she hasn't any cause of action at all. Now if you find that he promised to do something more for her in his will than he did do, and didn't do it, then she can recover whatever you say is the fair value of the services she rendered to him by virtue of that agreement; and you are to take into account all the surrounding circumstances, what he said, what she did, and say whether seven dollars a week that she was eventually getting, which the receipts state was all the claim she had against the estate, was a fair compensation for what she did. That is the amount Mrs. Woods offered her if she would leave and come to her. Now if that isn't a fair compensation for what she was doing, then you are to give her

as much more in addition as you think would be a fair compensation, not $85,000, but whatever you think a fair compensation, would be.

"Now you have got the receipts, you have got the report of the auditor, who finds as a matter of fact that he never promised to give her half of his estate, but did promise, in addition to the seven dollars a week, to make a suitable provision for her, so that she would be in fact provided for the rest of her life."

The defendants excepted to that portion of the charge wherein the judge said that the auditor had "made a mistake in the law."

There was a verdict for the plaintiff in the sum of $22,833.33; and the defendants alleged exceptions.

*W. A. Dane*, (*K. A. Sanderson* with him,) for the defendants.

*H. D. McLellan*, for the plaintiff.

CROSBY, J.   This is an action of contract brought to recover for personal services rendered from November 23, 1910, to September 2, 1918, to Everett Miles Taylor, the defendants' testator. The declaration contains three counts; the first is on an account annexed; the second is on a *quantum meruit* for labor performed and services rendered; the third sets up an express oral contract by which, in consideration that the plaintiff would remain with the testator and care for him and his household during his lifetime, he would pay her a sum equal to one half of his estate for her services. This count was waived at the trial. The defendants' answer contains a general denial, payment, and the statute of frauds.

The case was referred to an auditor who made certain findings of fact and ruled that the plaintiff was not entitled to recover. It was afterwards tried before a jury upon the auditor's report and certain documentary evidence and oral testimony set forth in the record, but the plaintiff called no witnesses other than those who testified at the hearings before the auditor. There was a finding for the plaintiff in the sum of $22,833.33.

The auditor found that at the time of the hearing before him the plaintiff was about fifty years of age; that the testator, who at the time of his death on September 2, 1918, was seventy-nine years of age, was a retired dentist; that he died from bronchial pneumonia after a brief illness; that during the last eight years of

his life he was not in robust health and was subject to occasional attacks of bronchitis and acute indigestion and had a slight affection of the heart, but except at rare intervals was able to manage his property, which required considerable of his time and attention; that when the plaintiff began her employment for the testator, on or about November 5, 1910, his family consisted of his wife and himself; that the wife was about the same age as her husband, and was in poor health at that time and died on November 23, 1910; that when the plaintiff began her service she received as wages $3.50 per week and was paid weekly.

The auditor also found, and it is undisputed, that the plaintiff was faithful, competent and considerate in her care of Mrs. Taylor, and during the succeeding eight years before his death the testator often spoke to his friends in terms of appreciation of the faithful care and attention which she had given to his wife and to himself.

Mrs. Taylor's estate amounted to about $155,000, and most of it was devised to her husband. His estate, according to the inventory, amounted to about $171,000 and practically all of it came from his wife except such additions from unexpended income as he had been able to make during the eight years that had elapsed since his wife's decease.

On March 22, 1911, the testator made his will and on May 9, 1913, he executed a second codicil thereto in which he gave to the plaintiff a legacy of $500 "in appreciation of the kindness and care by said legatee of my wife during her last illness."

During the time of the plaintiff's service for the testator her wages were increased three times as follows: to $4 per week on January 1, 1912, to $5 per week on August 26, 1912, and to $7 per week on December 25, 1916. On January 5, 1911, the plaintiff signed a receipt for $3.50 and from the date of this receipt to and including July 22, 1918, she signed receipts each week substantially identical in form with the first, and all of which were expressed to be in full of all demands to date. It also appears that after the testator's death there was due to her for wages and disbursements $166.65, which was paid by the executors and for which she signed a receipt; that she did not at that time refer to any other claim against the estate or contend that any promise had been made to her by Dr. Taylor for further remuneration.

The plaintiff testified on her direct examination that in the spring of 1911 the testator was injured by falling from a stepladder, that a few days later he said to her, "I will see that you are well provided for, Margaret, if you will stay with me right along," and that she said she would stay with him; that some time later she had another talk with him when he complained about being asked to make contributions and said, 'Margaret, the more money you have the more trouble you have'; and then he said,'Well, if you will stay by me as long as I need you I will give you half of what I have,' and I said, 'Yes, I will;'" and that "He said, 'Good, good,' twice." She further testified that she stayed and took care of him until he died.

The following question and answer were admitted subject to the defendants' exception: "Q. Whether or not you stayed there in reliance upon his promise to pay you in addition to the sums called for in the receipts, such a sum as he promised to pay on the occasion that you promised to stay with him? A. Yes." We are of opinion that this question was competent. The exception to its admission must be overruled.

On cross-examination the plaintiff testified in substance that as a result of the conversations she had with the testator she understood all the time she was working for him that she was to have a substantial sum of money left to her in his will; that she was disappointed and angry when she found that $500 was given to her; "that she felt Dr. Taylor had broken a promise he had made by not leaving her more by his will;" that he told her the amount of his property exceeded $155,000. She further testified that while the word "will" was never mentioned by him she expected that he would provide for her what was promised after his death.

Dr. Williams, who had treated the testator professionally, testified in substance that the latter said to him in May, 1911, "I have made arrangements with Margaret by which she will stay with me as long as I live. I have made provision for her so that after I do not require her any longer she will not have to work," or words to that effect. This witness further testified that Dr. Taylor made similar statements several times to him and that "once when plaintiff was away from home witness attended Dr. Taylor and told him that he was afraid Margaret wouldn't

come back and Dr. Taylor said, 'Oh, yes, Margaret will come back. We have a complete understanding that Margaret is to stay with me as long as I live'"; that this conversation took place on May 17, 1911. This witness further testified that on other occasions he had heard the testator say that he had arranged for the plaintiff's future, that she would never have to work after she left him and that she would stay with him as long as he lived.

Mrs. Woods, a witness called by the plaintiff, testified that in the fall before the testator's death she had a conversation with him concerning the plaintiff during which he said, "I shall look after her as long as she lives."

The auditor found that the testator never agreed to give the plaintiff a legacy, or devise to her any definite sum or any specific portion of his property. He further states as follows: "But I do find that the plaintiff believed and was justified in believing from what the defendants' testate said to her and in her presence that she was to receive by his will money or property sufficient in amount to provide for her a comfortable maintenance and support during the remainder of her life. . . . I find that it was expressly understood and agreed by the plaintiff and the defendants' testate that she was to receive no compensation for services rendered to him or on his behalf between November 23, 1910 and September 2, 1918, except such compensation as she actually received from week to week during this period and such additional remuneration as she expected to receive after his death by reason of the oral agreement of the defendants' testate to make a testamentary provision for her as set forth in the last preceding paragraph hereof."

It is difficult to reconcile the entire testimony of the plaintiff which is in some respects inconsistent and contradictory. From her direct examination it would appear that her claim was based upon the testator's promise that, if she would stay with him as long as he needed her, he would give her one half of his estate; while on her cross-examination she testified that he was to provide for her in his will. What the real agreement was, if there was any, was a question of fact to be determined by the jury upon all the evidence including the findings of the auditor and the rational inferences to be drawn therefrom. Whether the

testator's promise, if he made any, was or not testamentary in character was a question of fact. *Chandler* v. *Baker*, 191 Mass. 579. If the agreement was that he should provide for her in his will, it was unenforceable as it was not in writing, and the judge so instructed the jury. R. L. c. 74, § 6. *Chandler* v. *Baker*, *supra*.

If, as the auditor found and as the jury also could have found, the plaintiff and the defendants' testator entered into an agreement by which, in addition to certain weekly payments, the latter was to devise to her one half of his property, and she was to render services; and the plaintiff has fully performed her part of the agreement, which agreement was within the prohibition of the statute of frauds, she is entitled to recover the fair value of the services so rendered. Her testimony and that of Dr. Williams and Mrs. Woods, if believed, were ample to support such a contract. *Dix* v. *Marcy*, 116 Mass. 416. *Peabody* v. *Fellows*, 177 Mass. 290. *Kelley* v. *Thompson*, 181 Mass. 122. *DeMontague* v. *Bacharach*, 187 Mass. 128. *Donovan* v. *Walsh*, 238 Mass. 356, 362. "Recovery is allowed in such a case, not as an indirect way of enforcing the contract, which would be contrary to sound principles, but on the ground that the refusal of the defendant to perform constitutes a failure of consideration, and he is therefore bound to make the plaintiff whole for what he has got from him." *Cromwell* v. *Norton*, 193 Mass. 291, 293.

On the other hand, there was evidence from which the jury would have been warranted in finding that the plaintiff and the defendants' testator entered into a contract by the terms of which he, in addition to certain weekly payments, promised to give her one half of his property for her support and maintenance as long as she lived if she would stay with and take care of him as long as he needed her, and that she fully performed the agreement. Such a promise, if not to be executed by his will would not be within the provisions of the statute of frauds, as it might have been performed within one year; nor was it too vague or indefinite to be enforced. *Silver* v. *Graves*, 210 Mass. 26, and cases cited. It is manifest from the verdict that it was not based upon such a contract, but was a determination of the fair value of the plaintiff's services under the count upon a *quantum meruit*.

If, as the jury were warranted in finding, the promise of the testator was that he would compensate her by a testamentary provision in her favor and which she relied upon, since the promise was not enforceable by reason of the statute of frauds, she would be entitled to recover whatever sum, if any, her services were reasonably worth upon a *quantum meruit* and the judge in substance so instructed the jury; there is nothing to show that the general finding for the plaintiff was not based on that ground. *Chandler* v. *Baker, supra.*

The defendants' contention that the receipts given by the plaintiff are a complete bar to the maintenance of the action cannot be sustained. While a receipt in full of all demands cannot be varied or controlled by evidence of an oral agreement made contemporaneously with it and inconsistent with its terms, *Pierce* v. *Parker,* 4 Met. 80, *Curley* v. *Harris,* 11 Allen, 112, *Squires* v. *Amherst,* 145 Mass. 192, that rule is not applicable to an additional oral agreement.

When the plaintiff entered the service of the testator in 1910 her entire compensation was the payment to her of a stipulated weekly sum; it could have been found that afterwards in 1912, in consideration of her agreement to remain with and care for him as long as he needed her, he promised to make a testamentary provision for her which would be sufficient for her maintenance as long as she lived, and that in the meantime he would continue to pay her weekly wages. From this evidence a finding was warranted that an independent, collateral agreement by parol was entered into which can be enforced. Such a contract would not be at variance with the receipts which thereafter she signed. The oral agreement did not contradict the receipts but related to a distinct and independent contract between the parties. *Durkin* v. *Cobleigh,* 156 Mass. 108, 110. *Cole* v. *Hadley,* 162 Mass. 579, 581. *McCusker* v. *Geiger,* 195 Mass. 46, 53. *Brennan* v. *Employers Liability Assurance Corp. Ltd.* 213 Mass. 365. *Davis* v. *Cress,* 214 Mass. 379. *Keith* v. *Radway,* 221 Mass. 515. *Glackin* v. *Bennett,* 226 Mass. 316, 321. *See* v. *Norris,* 234 Mass. 345, 348; *Donovan* v. *Walsh, supra.*

The original contract could be changed by a subsequent writing or by oral agreement.

The instructions of the judge were without error; his direction

to the jury to disregard the ruling of law made by the auditor was correct, and the exception thereto must be overruled.

As the receipts are not a bar to the maintenance of the action, and as there was evidence which would have warranted a finding for the plaintiff upon a *quantum meruit,* the defendants' motion that a verdict be directed in their favor could not properly have been allowed. The defendants' requests, so far as not covered by the charge, were rightly refused.

*Exceptions overruled.*