ROBERT DELORAFANO *vs.* STACIA DELAFANO, administratrix, & another.

Norfolk.    February 6, 1956. — March 7, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Contract*, Of employment, Implied contract, Validity, Contract to leave property on death, Performance and breach.  *Equity Pleading and Practice*, Report of evidence, Variance.  *Executor and Administrator*, Claim against estate, Special administrator.  *Words*, "Creditor."

The evidence in a suit in equity, although printed in the record on appeal, was not properly before this court and was not considered where there was no order for a report of the evidence by the trial court in accordance with G. L. (Ter. Ed.) c. 214, § 24, as amended by St. 1947, c. 365, § 1;  Rule 76 of the Superior Court (1954).  [685]

A promise made by a father to his son upon the son's going to work for him in his store, that "if anything happens to" him the store business would be the son's, was not unenforceable on the ground of indefiniteness.  [687]

The fact that a son in good faith but mistakenly believed that his father promised to give him certain stock during the father's lifetime in addition to the compensation which the father agreed to pay him in employing him to work in the father's store did not entitle him to require the father to pay him more for his work than such compensation.  [687]

A promise made by a father to his son that "if anything happens to" the father his business "was going to be" the son's gave the son no cause of action during the father's life in the absence of a repudiation of the promise by him.  [687–688]

A suit in equity brought by a son against his father for a cause not established must be dismissed even if the death of the father during the pendency of the suit gave rise to another cause of action derived from a promise by the father that certain property should be the son's "if anything happens to" the father.  [688]

One asserting a claim based on failure of a deceased to give property by will to the claimant in accordance with a promise to do so would be a "creditor" of the deceased within G. L. (Ter. Ed.) c. 193, § 15, and a special administrator of the deceased's estate would not be liable to an action by the claimant to enforce his claim.  [688]

BILL IN EQUITY, filed in the Superior Court on July 29, 1954.

The suit was heard by *Pecce,* J.

*Joseph Gorfinkle,* for the defendants.

*Vincent R. Brogna,* (*Louis J. O'Malley* with him,) for the plaintiff.

WHITTEMORE, J. The defendants appealed from a final decree adjudging that the individual defendant and the corporate defendant are each indebted to the plaintiff in amounts stated in the decree.

The evidence is printed in the record but it is not properly before us and we have not considered it. Notwithstanding the amendment of G. L. (Ter. Ed.) c. 214, § 24, by St. 1947, c. 365, § 1, it is still necessary, in order to bring the evidence here, that there be a request in the Superior Court, there acted upon, in accordance with Rule 76 of that court. *Teal* v. *Jagielo,* 327 Mass. 156, 157.

The plaintiff sued inter alia to require his father, the original individual defendant, to transfer to him the majority of the shares of the corporate defendant, and to require his father and the corporate defendant to pay him the amount of his alleged loss of earnings sustained in giving up other employment and going to work, first for his father, and later for the corporate defendant when it succeeded to the business.

The judge found "all the material facts," and ruled "(I) that the oral promise made by the individual respondent to the petitioner is too indefinite, and, therefore, is unenforcible; (II) that, although the individual respondent's oral promise to the petitioner is not enforcible because of indefiniteness, the services rendered by the petitioner to the respondents give rise to a quasi contractual obligation which, in equity and good conscience, require the respondents to pay to the petitioner the fair market value of the services rendered by him to the respondents."

As a basis for the liability of the corporate defendant the judge found "(9) that the corporate respondent ratified and adopted the act of the individual respondent in employing the petitioner and accepted the petitioner's full-time work . . . ."

The docket entries show that the document containing the "Findings, Rulings, and Order for Decree" was filed March 22, 1955, that on March 30, 1955, the death of the individual defendant Arthur Delorfano was suggested, and that on April 7, 1955, a motion to substitute the present individual defendant, Stacia Delafano, as special administratrix of the deceased's estate, was filed and allowed by consent. The decree adjudges the indebtedness of Stacia Delafano as special administratrix.

The rulings, we hold, were erroneous.

The judge found in respect of the making of the subject contract the following: "The respondent said: 'Why don't you come to work for me? The store is going to be yours if anything happens to me.' The petitioner said: 'I would like to go to work for you.' At another time the individual respondent said to the petitioner's wife that he would leave everything to his son. The individual respondent agreed to pay the petitioner a weekly salary of fifty dollars and to give him meat and provisions valued at ten dollars once each week, as wages for the work which the petitioner agreed to perform. The individual respondent further agreed that if business would improve he would increase the petitioner's wages. . . . The petitioner left his job and went to work for the individual respondent as a salesman in the said store. . . . I find (1) that the individual respondent did not make the oral promise to transfer and to deliver to the petitioner the 88 shares of the capital stock of Arthur's Flavorland, Inc., at any time during his, the respondent's lifetime; (2) that the oral promise made by the individual respondent to the petitioner was, in substance, that if anything would happen to the individual respondent, the store business was going to be the petitioner's; (3) that the individual respondent, by his declarations and conduct, did not manifest the intention to give to the petitioner the said stock during his, the respondent's, lifetime; (4) that the petitioner in good faith assumed, believed and expected that the respondent would transfer and deliver to him the said stock soon after the petitioner had started to work in the

said business for the respondent; (5) that there was no meeting of the minds between the petitioner and the respondent with respect to the essential terms and conditions of the employment arrangement and the transfer and delivery of the said stock."

The foregoing include definite findings to the effect that the father promised the son that if he would come to work for him he would pay him $50 a week in cash and $10 a week in kind, and that if anything happened to the father the store business was going to be the son's. There was nothing so indefinite about these promises as to cause the contract to fail. Contracts to leave property upon death, if in writing, are actionable, *Howe* v. *Watson,* 179 Mass. 30, and if oral, and the statute of frauds is pleaded, give rise to a right by way of quantum meruit. *Donovan* v. *Walsh,* 238 Mass. 356. *Dixon* v. *Lamson,* 242 Mass. 129. *Hollister* v. *Old Colony Trust Co.* 328 Mass. 225. *Turner* v. *White,* 329 Mass. 549. The agreement to increase wages if business should improve[1] did not fail for indefiniteness. *Cygan* v. *Megathlin,* 326 Mass. 732.

It is apparent that the finding, by way of conclusion, "that there was no meeting of the minds," is based on the prior finding that the son "in good faith assumed, believed and expected" that the father shortly was going to give him stock. This is no more than a finding of unilateral mistake. There is no finding that the father spoke ambiguously or was in any other way estopped to rely on the terms of the contract which existed by virtue of his offer and the son's acceptance in the act of going to work. It is plain that the good faith of the son, in believing his father had said something to him about the stock which he had not said, gave rise to no equity in the son to require the father to pay him more in dollars than the father promised to pay.

So far as the findings show, the condition for the unperformed promise that the store would be the son's had not

---

[1] There is no suggestion that any of the amount decreed as owing is due because of improved business.

occurred when the suit was brought, or when the findings were made. There is included no finding that anything had happened to the father. The record does not show when the father died, but we assume that the suggestion of death, filed on March 30, 1955, recited that death occurred on the date stated in the defendants' brief, March 14, 1955. There is no fact found suggesting that the father had repudiated the contract so that a right accrued in the son prior to something happening to the father. See *Johnson* v. *Starr,* 321 Mass. 566.

If a cause of action accrued to the plaintiff on the contract or by way of quantum meruit when the father died, that is not the cause here sued on. The cases such as *Bauer* v. *International Waste Co.* 201 Mass. 197, 203–204, which show that the decree may reflect changes in facts after the bringing of the bill, are inapplicable here. "It is well settled that if a plaintiff at the time when he files his bill has no cause of action he cannot file a supplemental bill to maintain his suit upon a cause of action that accrued afterwards." *McMurtrie* v. *Guiler,* 183 Mass. 451, 454–455. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 226 Mass. 467, 471. *Childs* v. *Childs,* 293 Mass. 67, 72.

The substitution of the special administratrix as defendant brought her in to respond only to the claim asserted in the pleadings. Even if she had assented to be sued or held for a cause arising on the death of the father, it is questionable if this would have had any effect to support a decree against her on such a claim in view of G. L. (Ter. Ed.) c. 193, § 15, which provides, "A special administrator shall not be liable to an action by a creditor of the deceased . . . ." One who presents a claim for failure to leave property in accordance with a contract so to do is a creditor for purposes of G. L. (Ter. Ed.) c. 197, § 9 (see *Downey* v. *Union Trust Co.* 312 Mass. 405), and the word "creditor" means nothing different when it is used in G. L. (Ter. Ed.) c. 193, § 15. That section in addition to exempting a special administrator from suit by a creditor provides that "the time of limitation for all actions against the

estate shall begin to run only after the granting of letters testamentary or of administration in the usual form . . . ."

It would be difficult to find a basis for holding that the corporation must pay the difference between the fair market value of the son's services and what the father agreed to pay him for the time the son worked for the corporation, even were we to assume the equity of the son against the father on which the decree is based. But we do not get to the point. The ratification and adoption by the corporation of the act of the father which the judge found to have occurred did not in any event require the corporation to pay more than the father agreed to pay by way of wages, and that, it appears, the corporation has paid. We understand the findings to state that the son received $50 a week and $10 a week for groceries so long as he worked full time, and that his failure to work full time after May 3, 1954, was because of his dissatisfaction "with the conditions prevalent in the store, and especially because the . . . [father] had not transferred to the . . . [son]" the expected stock.

*Final decree reversed.*
*Final decree to be entered*
*dismissing the bill with*
*costs to the defendants.*