BRUCE CALLENDER *vs.* SUFFOLK COUNTY.

No. 01-P-983.

Suffolk. December 9, 2002. - February 11, 2003.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

*Limitations, Statute of. Practice, Civil,* Statute of limitations. *Public Employ-ment,* Worker's compensation, Assault pay benefits. *Workers' Compensa-tion Act,* Public employee, Claim, Discontinuance of payments, Judicial review. *Collateral Estoppel.*

The statute of limitations barred a suit by a corrections officer against the defendant county for assault pay benefits, brought more than six years after a letter from the county clearly terminated those benefits [364-365]; moreover, the principle of collateral estoppel did not prevent the county from litigating the question whether the officer had been injured by an inmate so as to be eligible for assault pay benefits, where the issue had not been litigated previously and had not been essential to an administrative judge's earlier decision regarding workers' compensation benefits [365-367].

CIVIL ACTION commenced in the Superior Court Department on July 2, 1997.

The case was heard by *Regina L. Quinlan,* J., on motions for summary judgment, and entry of final judgment was ordered by *Patrick J. King,* J.

*James M. Davin* for the defendant.

*Paul M. Moretti* for the plaintiff.

KANTROWITZ, J. The defendant, Suffolk County (county), seeks to reverse summary judgment in favor of the plaintiff, Bruce Callender, claiming that the Superior Court judge misapplied the statute of limitations and the doctrine of collateral estoppel. We agree and reverse.

*Background.* Callender was a corrections officer employed by the county. He alleges that on April 26, 1991, while working at the Suffolk County house of correction at Deer Island, he suf-

fered a disabling injury as a result of inmate violence. While the county was reviewing the incident, Callender received both assault pay benefits[1] and workers' compensation benefits.[2] After investigation, the county determined that Callender's claim that he was injured as a result of inmate violence was untrue. By letter dated June 18, 1991, Callender was informed that while his workers' compensation benefits would stop on June 25, 1991, "[t]he Workers' Compensation Agent is willing to reconsider this decision only if you can produce credible medical evidence that you in fact were injured on the job, and continue to be disabled as a result of that injury." The letter further stated that his assault pay benefits were "terminated as of June 12, 1991, and will not be reinstated."[3] It was the termination of this latter benefit that triggered the Superior Court action and appeal at hand.

In response to the letter, medical evidence was produced that resulted in the continuation of Callender's workers' compensation benefits for total disability until December 21, 1992. At that time, the county filed a request to discontinue or modify these benefits, claiming that Callender was not disabled at all or, at the least, was only partially disabled. Callender responded by claiming that he remained totally incapacitated from performing his duties as a corrections officer and was entitled to continued benefits.

Pursuant to G. L. c. 152, § 10A, a conference was held, and an administrative judge of the Department of Industrial Accidents (DIA) found that Callender was partially disabled. The

---

[1]Assault pay benefits provide, in part, that an employee of a house of corrections who, in the performance of his duties, sustains bodily injury caused by prisoner violence, the result of which is entitlement to workers' compensation under G. L. c. 152, shall be paid, in addition to the cash benefits of c. 152, the difference between that benefit and the employee's regular salary. The employee is also entitled to keep intact his existing sick leave without the leave for injury being charged against it. See G. L. c. 126, § 18A, and St. 1970, c. 800.

[2]Workers' compensation benefits were paid pursuant to G. L. c. 152, § 34.

[3]The county argues persuasively in its brief that it is not inconsistent to terminate assault pay benefits while considering paying workers' compensation benefits. Although its investigation showed that Callender's claim of injuries by inmate violence was untrue, it could not definitively ascertain that he was not hurt in the normal course of his duties.

administrative judge authorized the county to discontinue payment of temporary total incapacity compensation and ordered the county instead to commence payment of partial incapacity compensation under G. L. c. 152, § 35.

An appeal was filed for a hearing on this conference order. See G. L. c. 152, §§ 10A(3), 11. For purposes of the hearing, the parties entered into a stipulation which provided that "[t]he parties stipulate to the employment relationship and to the average weekly wage of $575.12. The parties agree that the employee was injured in the course of his employment on April 26, 1991." After the hearing, the administrative judge affirmed the finding of partial disability and ordered the county to continue to pay that benefit, pursuant to G. L. c. 152, § 35.

The administrative judge issued his report, dated June 10, 1994, which was divided into several sections. Of significance were the sections entitled "Subsidiary Findings of Fact" and "General Findings." In the former, he provided background information[4]; in the latter, he resolved the issues that were before him. Callender filed suit on July 2, 1997, seeking to recover assault pay benefits to which he claimed to be entitled as a result of the incident of April 26, 1991.

In 1999, the parties each filed a motion for summary judgment. The county claimed that as the injury occurred on April 26, 1991, and suit was brought on July 2, 1997, the six-year statute of limitations was violated. See *Chambers* v. *Lemuel Shattuck Hosp.*, 41 Mass. App. Ct. 211, 213 (1996) (*Chambers*). Callender countered, arguing that (1) per *Chambers, supra*, "each alleged violation of the continuing weekly obligation [to pay assault benefits resulted in] a new claim for statute of limitations purposes"; and (2) the cause of injury had previously been decided by the administrative judge and, therefore, the county was collaterally estopped from relitigating that issue.

The Superior Court judge granted summary judgment for

---

[4]In the background section, he wrote, in part, "[O]n April 26, 1991, while in the course of his employment with the employer, the employee was attempting to breakup [*sic*] a fight between two inmates when he was struck from behind." This is the only reference in the report to the specific cause of Callender's injury.

Callender, finding that, due to the absence of a clear and unequivocal repudiation of the county's contractual obligation, there was no statute of limitations violation because, citing *Chambers, supra,* "[e]ach week in which the defendant refused to award Assault Pay constitutes a new breach for the purposes of the statute of limitations." The judge also agreed with Callender that the "finding" by the administrative judge as to the cause of injury was conclusive against the county. Judgment then entered, from which the county has appealed.

*Statute of limitations.* The parties and judge correctly stated the governing law. The applicable statute of limitations is six years. *Chambers, supra* at 212. Generally, each alleged violation of the continuing weekly payment obligation of assault pay benefits is considered "a new claim for statute of limitation purposes, 'as with any contract calling for . . . payment of money in separate installments.'" *Chambers, supra* at 213, quoting from *Larson* v. *Larson,* 30 Mass. App. Ct. 418, 427 (1991).

There is an exception, however, to what is in reality a rolling statute of limitations, which the motion judge recognized. When there is a clear and unequivocal repudiation of a party's contractual obligation, the statute of limitations begins to run from the date of the repudiation. See *Delorafano* v. *Delafano,* 333 Mass. 684, 688 (1956); *Gordon* v. *Southgate Park Corp.,* 341 Mass. 534, 537-538 (1960); *Barber* v. *Fox,* 36 Mass. App. Ct. 525, 527 (1994).

The issue at hand, then, is whether the language in the county's letter to Callender of June 18, 1991, was a clear and unequivocal repudiation of the county's contractual obligation to pay assault benefits, thus starting a single limitations period running from that date, or whether the language was, as the lower court found and Callender alleges, equivocal, in which case a new limitations period started every time a payment was not made.

The Superior Court judge reasoned that because the June 18 letter invited Callender to produce credible evidence for purposes of his workers' compensation benefits and because assault pay and workers' compensation are "clearly interrelated since the employer of necessity must determine when and how

the employee was injured," then the letter, viewed in its entirety, was not a clear and unequivocal repudiation of its obligation to pay assault pay benefits.

We disagree. The letter stated succinctly and simply that, as for assault pay, it was "terminated and . . . [would] not be reinstated."[5] It is difficult to envision clearer language of intent. The letter sufficiently conveyed to its reader the notion that any contractual obligation to pay assault benefits was being repudiated. More significantly, from a legal standpoint, it commenced the running of the statute of limitations from that date six years forward, to June 18, 1997. See and compare *Barber* v. *Fox*, 36 Mass. App. Ct. at 527-528. As Callender filed suit on July 2, 1997, that filing was not timely.

*Collateral estoppel.* We further hold that the principle of collateral estoppel, also called issue preclusion, does not apply to the facts of this case. "Issue preclusion may be used defensively if (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment." *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 (2001).[6] Collateral estoppel should only apply to issues actually litigated. *Treglia* v. *MacDonald*, 430 Mass. 237, 241 (1999).

It is true that "[i]f the conditions for preclusion are otherwise met, '[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction.' " *Green* v. *Brookline, supra* at 123-124, quoting from *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 135 (1998).

Whether Callender was injured by an inmate was not a live

---

[5]The reference to reconsideration of benefits upon submission of evidence dealt with the workers' compensation benefits.

[6]Collateral estoppel may be used offensively (as Callender here attempted to do) to prevent a defendant (here, the county) from relitigating issues which the defendant previously litigated unsuccessfully in a prior action. See *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 9 (1995).

and litigated issue before the administrative judge, nor was it essential to his decision. The sole bone of contention at the DIA hearing was whether Callender was disabled as of December 21, 1992, and to what extent. The parties stipulated to other standard issues, e.g., the employment relationship and that the employee was injured in the course of his employment on April 26, 1991.

Given the stipulation that Callender had been injured on the job,[7] how that injury came to be was not an issue before the judge, nor was it essential to his decision, which was limited to the amount, if any, of workers' compensation benefits to be paid.[8] The sole mention of the cause of injury made by the judge was under the "subsidiary finding" section, which was where the judge generally compiled background information.

That this issue was not litigated is further evidenced by the notable absence of any documents, testimony or evidence in the record pertaining to the cause of Callender's injuries. There were eleven exhibits before the administrative judge.[9] Four witnesses testified. We do not have a transcript of the hearing, so we do not know to what they testified. What is notable is what the record of the DIA hearing lacks — testimony from the corrections officers who allegedly witnessed the incident and their reports dealing with it, which compelled the county to terminate assault pay benefits in the first place.[10]

The administrative judge appears to have simply recited Cal-

---

[7]Of significance, the stipulation did not refer to the cause of the injury.

[8]Indeed, in the "Claims" section of the report, the administrative judge wrote: "The employee claims benefits under [G. L. c. 152, § 34,] for the period beginning December 21, 1992 and continuing. In the alternative, the employee seeks an increase in the amount of his [G. L. c. 152, § 35,] benefits."

[9]One was biographical data, one was the sheriff's department's policy statement, seven were letters between the attorneys, one was the report of the impartial medical examiner, and one was a charge of discrimination. None of these were included in the record appendix.

[10]Officer Mills, Callender's partner, reported that "at no time during the altercation did Officer Callender try to break up the fight between [the] inmates." Officer Bemis, a responding officer, stated "it appeared C.O. Callender made no attempt to physically restrain either inmate." Officer Minerella, another responding officer, reported that he and Officer Bemis restrained one of the inmates, making no mention of any involvement by Callender. Furthermore, the deputy superintendent in charge of operations at the house of

lender's version of events as background material to the real is-
sue at hand. This off-handed recitation cannot form the basis of
collateral estoppel.

The judgment for Callender is reversed. Judgment is to enter
for the county.

*So ordered.*

correction, Marie Lungelow, later signed an affidavit stating that after the
incident, Callender reported that he had not been injured when responding to
the altercation between two inmates on April 26, 1991, and never submitted
an accident report as he was required to do if he was injured during the fight.