JOHN D. MAHONEY vs. ANNA L. BEEBE & another.

Essex.    January 6, 1956. — May 10, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Contract*, For sale of real estate, Performance and breach. *Real or Personal Property. Real Property*, Chandelier. *Laches. Equity Jurisdiction*, Laches. *Tender.*

A written contract of sale of a cottage providing for conveyance "when
. . . [the seller] vacates" it, but not fixing a definite date when he
should vacate although the contract was otherwise complete, was
specifically enforceable by the buyer in a suit in equity commenced
about two years after its making notwithstanding the fact that the
seller still resided in the cottage. [167]

There was no error in a finding that chandeliers in a house, each attached
to a piece of pipe screwed into a bolt in an iron box in the ceiling and
easily removable, had become incorporated in and a part of the realty,
and a seller of the house who removed the chandeliers upon conveying
it to the buyer pursuant to a contract of sale silent as to them was
liable for their value to the grantee. [167–168]

Laches as a defence to a suit in equity for specific performance of a con-
tract of sale providing for conveyance of a cottage to the plaintiff
"when . . . [the seller] vacates" it was not shown where any delay
in bringing the suit was caused by the defendant, who still resided in
the cottage when the suit was commenced. [168]

A tender of the purchase price of a cottage by the buyer under a contract
of sale was not necessary to maintenance of a suit by the buyer for
specific performance where the seller had refused to make a convey-
ance. [168–169]

BILL IN EQUITY, filed in the Superior Court with a writ of
summons and attachment dated June 12, 1952.

The defendants filed a demurrer based on the ground that
the plaintiff was not entitled to specific performance or to
any other relief in equity against the defendants "because
it appears from the plaintiff's bill that the agreement for
purchase and sale, entered into between the plaintiff and
the defendants, was subject to a condition precedent, namely
to the vacating by the defendants of the premises before the

said premises were to be conveyed by the defendants, and said vacating, as appears in the plaintiff's bill, was never effected."

The defendants appealed from an interlocutory decree entered by *Morton, J.*, overruling the demurrer, from an interlocutory decree entered by *Pecce, J.*, confirming a master's report which did not report the evidence, and from a final decree entered by *Fairhurst, J.*

*George Karelitz, (Jason S. Cohen* with him,) for the defendants.

*John J. Ryan, Jr.*, for the plaintiff.

RONAN, J. These are appeals from interlocutory decrees overruling a demurrer and confirming a master's report, and from a final decree ordering the defendants, who are husband and wife, to convey a parcel of land upon the payment of a certain sum to them, and ordering the female defendant to pay $300 to the plaintiff on account of chandeliers which she has failed to deliver to him.

It appeared from the report of a master that the defendants on April 29, 1950, entered into a written contract to convey to the plaintiff a parcel of land situated on the corner of Mill Street and Arlington Place in Haverhill for $18,000. The land contained a ten room house and also a building comprising six rooms and a garage. The contract provided for a conveyance of the large house for $14,000 on or before June 1, 1950. The agreement left a blank space in which to insert either August 29, 1950, or September 1, 1950, as the date for the conveyance of the cottage house and garage for $4,000. Mrs. Beebe had brought a writ in a summary process for possession against the tenant of the cottage on the ground that she needed this house for immediate personal occupancy. The tenant moved out before December 1, 1948, and the defendants moved into the cottage on June 17, 1950. Mrs. Beebe refused to sign the agreement with August 29, 1950, or September 1, 1950, as the date of conveyance of the cottage because, as she asserted, the owner in getting possession for personal occupancy in a summary process would have to live in the cot-

tage for at least six weeks. The agreement so far as it related to the terms of the transfer of the cottage was changed to read, "It is also agreed and understood that when grantor vacates the grantor agrees to sell and convey said six-room apartment and garage on 2 Arlington Place to the grantee for the sum of $4,000, at which time the entire property located at the above address will be vested in the grantee, as soon as grantor vacates."

The defendants conveyed the large house to the plaintiff on or about June 15, 1950, upon the payment of a total of $14,000 by a warranty deed free from all encumbrances except building and zoning ordinances, and moved into the cottage where they still reside, and refused to transfer the cottage and garage as they agreed to do.

We do not agree with the defendants that they were not compelled to deed the cottage and garage to the plaintiff until they saw fit to vacate the premises. It is true that the written agreement fixed no definite date when they should leave the cottage and garage. It must be assumed that both parties were acting in good faith, and there was nothing to show that the parties understood that any essential item remained to be agreed upon. If, as appears here, nothing remained to be agreed upon but the time for making the transfer, that would be supplied by the law. Consequently there was no error in overruling the demurrer or in ordering the conveyance of the property to the plaintiff upon the payment in accordance with the written agreement. *Buono* v. *Cody,* 251 Mass. 286, 291. *Laidlaw* v. *Vose,* 265 Mass. 500, 505. *Lieberman* v. *Cohn,* 288 Mass. 327, 331. *Church* v. *Lawyers Mortgage Investment Corp. of Boston,* 315 Mass. 1, 6.

The female defendant was ordered to pay the plaintiff $300, the value of the two chandeliers she removed from the big house when she vacated around June 17, 1950. Each of them was attached to a piece of pipe which screwed into a bolt in an iron box in the ceiling and was easily removed. One had been given to Mrs. Beebe as a birthday gift by her husband when she acquired the property in 1934 and the other was previously used by her mother and was installed

in the house when the female defendant purchased it. The master specifically found that early in their negotiations Mrs. Beebe told the plaintiff that she intended to keep the chandeliers and the plaintiff replied that he would buy the property "as is," that there was no subsequent discussion concerning the chandeliers, and that the minds of the parties never met concerning them. Both had some sentimental value to the defendants. The master made no finding, as he should have, as to whether they were fixtures or a part of the realty or whether they were chattels or personal property. A judge, other than the judge who ordered the report confirmed, made a finding that the chandeliers were a part of the realty and that they passed with the warranty deed of the conveyance of the big house. The defendants have failed to show that this finding of the judge was not based on evidence. *Kenney* v. *Blackman*, 282 Mass. 268. *LaChance* v. *First National Bank & Trust Co.* 301 Mass. 488, 490. *S. M. Spencer Mfg. Co.* v. *Spencer*, 319 Mass. 331, 339. Whether the chandeliers remained personalty or became realty when they were set up by Mrs. Beebe in her home presumably to make it more livable while she occupied it, with no thought of vacating or removing the chandeliers, was a question of fact, and we think there was no error in finding that they had become incorporated into and became a part of the realty. See *Hook* v. *Bolton*, 199 Mass. 244; *Myers* v. *Hancock*, 185 Va. 454; *Strain* v. *Green*, 25 Wash. (2d) 692.

There is nothing in the contention of the defendants that the plaintiff should be barred on account of laches. Whatever delay there has been has been caused by the female defendant who contends in one breath that a suit before she vacates the cottage is premature and in the next breath that bringing the present suit is too late. We agree with the master who found that the plaintiff has not been guilty of laches. *Shea* v. *Shea*, 296 Mass. 143. *Norton* v. *Chioda*, 317 Mass. 446, 452.

The plaintiff never made a formal tender of the purchase price of the cottage and garage. The master found that the

plaintiff had the necessary funds, *Driscoll* v. *Bunar,* 328 Mass. 398, 401, and it was not necessary to make a tender when tender was not in order because of the failure of the defendants to perform. *Schilling* v. *Levin,* 328 Mass. 2, 5. *Leigh* v. *Rule,* 331 Mass. 664, 668–669.

The interlocutory decrees are affirmed, and the final decree is affirmed with costs of the appeal.

*So ordered.*