STEPHEN S. GORDON vs. SOUTHGATE PARK CORP.
(and a companion case[1]).

Suffolk.    October 6, 1960. — December 7, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Contract*, Performance and breach, Building contract. *Pleading, Civil*,
Answer.

In an action by a prospective purchaser of a house to be constructed by
the defendant in accordance with carefully drawn, detailed plans and
specifications for personal occupancy by the plaintiff, to recover amounts
paid by the plaintiff to the defendant under their contract prior to
commencement of the action, which was commenced two months before
the date set for conveying title, a contention by the defendant that the
action was an attempt to recover for anticipatory breach of contract
and could not be maintained was without merit where it appeared that
prior to commencement of the action the defendant without the consent
of the plaintiff had committed at least five substantial breaches of the
plans and specifications "with full knowledge" that he was deviating
therefrom and had unequivocally refused to rectify the breaches, and
that as a practical matter "it would have been impossible to do the work
required by the plans and specifications" by reason of the changes made
in the house by the defendant.    [536–538]
In an action to recover sums paid by the plaintiff to the defendant under
a contract which the declaration alleged the defendant had "intention-
ally failed to perform . . . in substantial respects," a defence of waiver
by the plaintiff of the breaches of contract, not pleaded in the answer,
was not open.    [538]

TWO ACTIONS OF CONTRACT.   Writs in the Superior Court
dated March 28, 1958, and May 19, 1958, respectively.

The actions were heard by *Pecce*, J., on the reports of an
auditor.

*Alan L. Lewis*, for Southgate Park Corp.

*John R. Ambrogne*, (*Philip D. Fine* with him,) for
Gordon.

CUTTER, J.   On January 13, 1958, Gordon made a con-
tract with Southgate Park Corp. (Southgate) to purchase

---

[1] An action by Southgate against Gordon to recover for alleged "extras."

for $36,800 two lots of land "together with the house to be constructed thereon" by Southgate in accordance with carefully drawn, detailed specifications. Conveyance was to be made on June 1, 1958. Under the contract Southgate agreed to allow Gordon "to have access to and inspect the work during its progress." A substantial number of items in the specifications were in one aspect or another to be accomplished in a manner "to be selected by" Gordon.

By the time he signed the contract Gordon had paid to Southgate a total of $4,500 and on March 12 and 13, 1958, Gordon paid for extra work and for better materials than those specified a total of $345. Early in April, Gordon claimed that Southgate was refusing to permit him to select certain materials as Gordon was permitted to do by the specifications. He brought a bill in equity against Southgate and obtained an order, of which Southgate learned on April 14, which restrained Southgate "from performing any work with respect to which the specifications and agreement provide that . . . [Gordon] shall have a right of choice." Thereafter Southgate refused to allow Gordon on the premises on which the house was being built. In numerous instances, many of them of substantial importance, "specifications [were] not carried out by . . . [Southgate] in whole or in part." On June 2, 1958, there were "no heating, no toilets, [and] no kitchen equipment other than part of . . . [certain] cabinets" on the premises. The "house was not completed by June 2, 1958, . . . and . . . the building had not been inspected and passed as of" that date.

On March 28, 1958, Gordon brought an action against Southgate. By count 2 of the declaration, Gordon sought to recover the $4,845 theretofore paid to Southgate and alleged that Southgate had "intentionally failed to perform [the agreement] in substantial respects" and that on that account Gordon was "under no obligation to" Southgate and "entitled to recover the deposit paid under the contract." On May 19, 1958, Southgate brought a cross action to recover from Gordon $4,270 for certain alleged extra

work.   Gordon filed an answer and declaration in set-off to recover the sum of $4,845 already mentioned and another item.   By amendment Gordon sought a further recovery of $391.43 for payments made to an electrical company, for extra work, for which Gordon had become directly liable to that company.

The cases were referred to an auditor whose findings of fact were to be final.   The auditor filed a report in each case.   He found for Gordon in the case brought by him in the sum of $4,845, and also found for Gordon upon his declaration in set-off, in the case brought by Southgate, in the sum of $391.43.   The facts have been stated in accordance with the findings of the auditor.   Motions for judgment on the auditor's report were allowed.   Southgate has appealed in each case from the order for judgment and from the denial of motions to recommit the auditor's report. Southgate in its brief, however, does not argue any question with respect to the motions to recommit.

1.   There is no merit to Southgate's contention that the action brought by Gordon is in effect an attempt to recover (see *Daniels* v. *Newton,* 114 Mass. 530; Williston, Contracts [Rev. ed.] § 1314) for an anticipatory breach of contract. Examination of this contract leaves no doubt that the agreement called for the construction of a dwelling for Gordon's own occupancy and that exact compliance with the plans and specifications reasonably was a matter of importance to Gordon.   Southgate, prior to March 28, 1958, the date of the writ, had committed at least five major breaches of the specifications, viz. (1) the building was seven inches shorter than the width called for by the specifications; (2) the distance between the floors and the ceilings was at all places at least ten inches less than prescribed by the specifications; (3) the ''overhang'' was only twenty-nine inches where one of thirty-six inches was called for; (4) Southgate had done painting where the specifications called for staining, and staining could not be done over paint; and (5) ''the size of the roof . . . was not in accordance with the plans.''   The record also suggests without a clear finding to this effect

that the building was built partly on land other than that designated in the agreement. As to some of these breaches, when Gordon complained, Southgate refused to make any change and its representative told Gordon "that he didn't want . . . [him] to be fussy and to use a ruler and to make so many complaints." Other substantial breaches, and such breaches were numerous, may have occurred after March 28, 1958, rather than before that date.

The auditor found that Southgate deviated from the plans and specifications "with full knowledge" that it was doing so. He also found that, by the time the restraining order was issued, Southgate, "without consent of . . . [Gordon], had made changes in . . . the building" after which "it would have been impossible to do the work required by the plans and specifications." Indeed, this, as a practical matter, must have been the case. The unauthorized reductions in the specified width of the house and the vertical distance between floors could hardly have been altered without tearing out much of the construction already accomplished. There is no basis (cf. *Tirrell* v. *Anderson*, 244 Mass. 200, 203) in the subsidiary findings for any reasonable inference that Southgate either would have been willing to do this, or that it could have corrected its errors by June 2, the date set for conveyance. The subsidiary findings thus indicate substantial (cf. *Lantz* v. *Chandler*, 340 Mass. 348, 349) breaches prior to the date of Gordon's writ and Southgate's repudiation of any obligation to remedy breaches of the specifications appears to have been unequivocal as of that date.[2] Without consideration of

---

[2] After a restraining order was issued in the equity suit, Southgate refused at least from April 7 to May 31, 1958, to permit Gordon to come on the premises. This in itself was a substantial breach of the agreement in view of the then pending controversies between the parties. This breach constituted not only further basis for the declaration in set-off contained in Gordon's answer to Southgate's action against him but also a continuing confirmation of Southgate's unwillingness to perform obligations currently due under the contract. In the performance of this building contract, Gordon was entitled to have orderly and constant progress made from day to day in accordance with the plans and specifications. Denial of access to the work would necessarily have the effect of preventing Gordon from seasonably discovering any new breaches by Southgate and of delaying complaint about them.

341 Mass. 534

Gordon v. Southgate Park Corp.

other remedies which Gordon may have had (see *Carrig* v. *Gilbert-Varker Corp.* 314 Mass. 351, 356–357), he at least became entitled to treat the agreement as broken and to recover all the payments he had made to Southgate. See *Ballou* v. *Billings,* 136 Mass. 307, 308–309; *Orebaugh* v. *Badger,* 279 Mass. 54, 61. See also *Martin* v. *James Cunningham, Son & Co.* 231 Mass. 280, 284; *Wilkins* v. *Berkeley Realty Corp.* 311 Mass. 148, 151; *Carrig* v. *Gilbert-Varker Corp.* 314 Mass. 351, 356; Restatement: Contracts, § 347; Restatement: Restitution, § 108; Corbin, Contracts, §§ 1104, 1106, 1107; Williston, Contracts (Rev. ed.) §§ 1316, 1331, 1467. Cf. *Nevins* v. *Ward,* 320 Mass. 70, 73–75.

2. Southgate contends that in early April, 1958, Gordon waived count 2 of his declaration by initiating his bill in equity to restrain Southgate from performing work with respect to which Gordon had a right of choice. We need not consider, however, whether the bill in equity may properly be regarded as merely a reasonable attempt by Gordon to preserve the then existing status of affairs pending further investigation of the alleged breaches of contract or whether it constituted a waiver of breaches prior to March 28, 1958. Waiver, an affirmative defence, was not pleaded by Southgate. The defence cannot be raised at this stage. See *Nashua River Paper Co.* v. *Lindsay,* 242 Mass. 206, 208; *Siegel* v. *Shaw,* 337 Mass. 170, 174. See also *Akasu* v. *Power,* 325 Mass. 497, 502–503.

*Orders for judgment affirmed.*