SIDNEY TUCKER *vs.* RAYMOND A. CONNORS & others.[1]

Norfolk.    February 8, 1961. — April 4, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Option.  *Equity Jurisdiction,* Specific performance, Retention
of suit for further relief.  *Tender.  Equity Pleading and Practice,* Mas-
ter: summary of evidence, recommittal, report of evidence; Suit for
specific performance; Premature suit; Bill; Parties.

A party to a suit in equity was not entitled under Rule 90 of the Superior
Court (1954) to a summary of evidence by a master in connection with
an objection not specifically directed to a question of law shown on the
face of the master's report to depend on evidence not reported.    [380–
381]
No abuse of discretion was shown in denial of a motion to recommit to a
master in a suit in equity for a report of further findings or of evidence
even if an affidavit filed in support of the motion showed that there had
been, and correctly stated, evidence heard by the master contrary to his
findings.    [381]
Where an owner of land gave an option to purchase it and then, before
the period for exercising the option had expired, conveyed the land to a
grantee having knowledge of the option, who gave a mortgage of the
land to one also having knowledge of the option, the holder of the
option, upon seasonably exercising it, was not premature in then bring-
ing a suit against the former owner of the land, the grantee, and the
mortgagee seeking an injunction against the grantee's conveying the
land and specific performance of the contract created by the exercise of
the option, although the time for conveyance set by that contract had
not arrived.    [381–383]
Failure by the holder of a seasonably exercised option for purchase of land
to tender performance before bringing a suit in equity for specific per-
formance of the contract created by the exercise of the option did not
bar relief where it appeared that before it was exercised the defendant
owner of the land had conveyed it to a third person and thus repudi-
ated any obligation to convey it to the plaintiff.    [383]
After a landowner who had given an option to purchase it had conveyed it
during the period for exercising the option to one having knowledge of
the option and the grantee had given a mortgage of the land to one also
having knowledge of the option, there was no nonjoinder of necessary
parties defendant in a suit brought by the holder of the option, upon
exercising it, against the former owner, the grantee, and the mortgagee
for an injunction against the grantee's conveying the land and specific
performance of the contract created by the exercise of the option; cer-

[1] Ruth Gleken and Central Acceptance Plan, Inc.

tain other persons were not shown to have had any interests such that they were necessary parties.    [383–384]

In a suit in equity by the holder of an exercised option to purchase land against the landowner who had given the option, one to whom the landowner had conveyed the land, and one holding mortgages thereof for an injunction against conveyance thereof by the grantee and specific performance of the contract created by the exercise of the option, this court directed the trial court to retain jurisdiction until all acts necessary to afford complete relief to the plaintiff had been accomplished. [384]

BILL IN EQUITY, filed in the Superior Court on October 8, 1958.

A motion to recommit to a master was denied, and the master's report was confirmed, by *Smith, J.* A final decree was entered by *Meagher, J.*

*Harold Brown,* (*Peter J. Adolph* with him,) for the defendants.

*William J. Carr,* for the plaintiff.

CUTTER, J.    Connors was the owner of land (the locus) in Randolph and Stoughton.    On September 9, 1958, for $100 he gave to Tucker an option to purchase the locus for $15,000.    The option could be accepted within sixty days by written notice.    Conveyance was to be made within thirty days after such acceptance.    The option was not recorded in the registry of deeds.    About the same time one Lord began negotiations with Connors for the purchase of the locus.    Lord went to the house of one Upham, the holder of a second mortgage of the locus on which $7,300 was due, and bought that mortgage for $5,000.    The mortgage was assigned to Lord on September 12, and he assigned it to Central Acceptance Plan, Inc. (Central).

While Lord and Mr. Brown, attorney for Central, were at the Upham house, Connors, who wished to purchase the mortgage himself, arrived and found them with Upham. One Kourafas was "outside . . . in an automobile."    Connors shortly thereafter agreed to sell the locus to Lord or his nominee for $5,000 subject to a savings bank first mortgage not to exceed $2,700 and to the second mortgage to Upham, the "[s]eller . . . to obtain release of option" of September 9 "given to Tucker."    Lord had conversations

with one Waldman, treasurer of Central, regarding the purchase of the locus and the second mortgage. Waldman and his brother-in-law, one Carver, owned all the stock of Central.

On September 26, Connors and his wife went to the registry of deeds to complete the sale to Lord. There were present Lord, Waldman, Carver, Kourafas, and Mr. Brown. Waldman represented Ruth Gleken, who was not present. She had been employed by Central for sixteen years and was then bookkeeper and clerk of Central. In the deed, which was then delivered and recorded, Miss Gleken was named as grantee. Lord in the presence of the others told Connors that Miss Gleken was "just a straw for" Lord, Kourafas, and Waldman.

Waldman paid Connors $8,000 in cash, although the purchase price set by Lord's agreement with Connors was $5,000. Miss Gleken executed a demand note running to Central with interest at a rate of eight per cent. This note was secured by a third mortgage of the locus. No principal or interest payments have been made on this mortgage, and foreclosure proceedings have been initiated in the Land Court.

By letter dated October 7, 1958, the envelope of which was post marked October 9, Tucker gave notice of his intention to exercise his option. On October 8, he filed this bill in equity alleging that Connors had "stated that he does not intend to convey" to Tucker, and that "if the premises are conveyed to a bona fide purchaser for value . . . [Tucker] may be unable to obtain title to the same." The bill prayed for temporary injunctive relief against any conveyance by Miss Gleken and sought (a) reconveyance of the locus to Connors, (b) a conveyance by Connors to Tucker in accordance with the option, and (c) damages.

The case was referred to a master to "find the facts and report his findings . . . together with such questions of law . . . as any party may request." The facts already stated are based upon the master's findings. He concluded (1) that Tucker had an option, binding on Connors, which

prior to its expiration was duly exercised by bringing this suit; (2) that Connors, Miss Gleken, Central through Waldman, and Mr. Brown "had full and complete knowledge of" the option prior to the conveyance from Connors to Miss Gleken on September 26, 1958; and (3) that Miss Gleken's note to Central and the third mortgage were given to Central with full knowledge by both of Tucker's option.

Miss Gleken and Central filed objections to the master's report and a motion to recommit. The objections asserted that Tucker was not entitled to relief (a) because his "action [*sic*] . . . is based on an anticipatory breach of contract," (b) because he has not alleged or proved that he was ready, willing, and able to carry out the purchase or that he made seasonable tender, and (c) because Lord, Kourafas, and Waldman were not joined as parties. Their further objections are anomalously phrased somewhat as if they were requests for rulings of law. These objections merely assert (in various forms, of which that quoted below is representative, and all of which amount to about the same thing) that where "the holder of a 60 day option . . . states he is not going to buy the land, a subsequent attempt to enforce the option is inequitable and should not be aided by equity, particularly when the owner sold the land to another in reliance thereon." In support of certain of the objections Miss Gleken and Central requested "that the master make a . . . summary of so much of the evidence as shall be necessary . . . to determine the questions of law referred to in . . . [the] objections."

In connection with their motion to recommit, their counsel filed an affidavit that "the evidence was" that one savings bank had refused to lend money to Tucker on the security of a mortgage of the locus; that Tucker told Connors, before the latter conveyed to Miss Gleken, that Tucker was "not going to go through with the purchase"; and that there was no evidence of any tender by Tucker or that Tucker (or a corporation in which he had an interest) was financially able to purchase the locus.

Miss Gleken and Central have appealed from an inter-

locutory decree confirming the master's report. They have also appealed from a final decree ordering (1) Miss Gleken, within thirty days of the entry of the decree, upon payment to her by Tucker of $15,000 to convey the locus to Tucker "free of all encumbrances"; (2) Connors to pay to Miss Gleken $3,000 within the same thirty day period; and (3) Central to discharge the mortgage given by Miss Gleken.

1. Whether Miss Gleken and Central were entitled as of right to any summary of evidence relevant to their exceptions depends upon Rule 90 of the Superior Court (1954),[2] which "is not to be ignored or evaded." See *Morin* v. *Clark*, 296 Mass. 479, 482. The reference of the case to the master did not authorize any report of the evidence, and thereafter there was no order of the court that the master report any evidence.

No exception to the report suggests that any finding by the master was not based upon evidence sufficient to support it. See *Morin* v. *Clark*, 296 Mass. 479, 482–483; *Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 507–508. Accordingly, we are not concerned with the prerequisites for obtaining a summary of the evidence in respect of such an exception. These prerequisites are set out with great precision in the second sentence quoted above from Rule 90. See footnote 2, *supra*. The first sentence there quoted from Rule 90 governs the present case. Miss Gleken and Central are entitled as of right to a summary of evidence only with respect to an exception which raises "a question of law which depends upon evi-

---

[2] Rule 90, so far as relevant, reads, "Unless the court expressly orders otherwise, whenever any objection . . . raises a question of law which depends upon evidence not reported, the master, upon written request presented with the objection, shall append to his report, for the sole purpose of enabling the court to determine such question of law, a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose. But where the objection raises the question whether the evidence was sufficient in law to support a finding of fact made by the master, no such summary shall be made without special order of the court, unless (1) the evidence shall have been taken by a stenographer selected or approved by the master before any evidence was introduced, and (2) the objecting party shall at his expense furnish the master, within the time allowed for bringing in objections, with a transcript of so much of the evidence taken by such stenographer as is material to such question of law."

dence not reported.'' Typical of ''such questions are those arising upon rulings upon evidence made by the master during the hearings or other rulings relating to the conduct of the hearing.'' See the *Buckley & Scott Util. Inc.* case, *supra,* at p. 508. Even such a question reported by a master must be the subject of an exception particularly addressed to it. See *Meehan* v. *North Adams Sav. Bank,* 302 Mass. 357, 363. No exception to the report either is of this type or relates to any ruling of law shown upon the face of the report (see *Minot* v. *Minot,* 319 Mass. 253, 258) to depend ''upon evidence not reported.''

2. The affidavit filed, in purported compliance with Rule 46 of the Superior Court (1954), in support of the motion to recommit showed at most that there was evidence inconsistent with the master's findings. The master was not required to believe this evidence and apparently did not regard it as credible. Whether to grant a motion to recommit for further findings is within the sound discretion of the judge. See *Black* v. *Parker Mfg. Co.* 329 Mass. 105, 118; *DiMare* v. *Capaldi,* 336 Mass. 497, 501; *Lombardi* v. *Bailey,* 336 Mass. 587, 595–596. Even if the affidavit correctly stated the evidence to which it referred, it did not establish that the master's report was inadequate or did not furnish a satisfactory basis for a decree. There was no abuse of discretion in refusing to recommit the report for further findings or for a discretionary report of evidence.[3]

3. The bill in equity was not brought prematurely. Connors was bound by the option given to Tucker for a consideration. See Williston, Contracts (3d ed.) §§ 25, 61A–61D. Cf. *McPhail* v. *L. S. Starrett Co.* 257 F. 2d 388, 393 (1st Cir.). Yet, by his deed to Miss Gleken, he put it out of his power to convey to Tucker if the option should be exercised. The enforcement of an option for the benefit of its holder

---

[3] A judge, in his discretion, may order a report of all or part of the evidence before a master. *Morin* v. *Clark,* 296 Mass. 479, 483. Such an order is likely to be made only in the case of an inadequate master's report or upon a clear showing, in accordance with Rules 46 and 90, that such an unusual order is essential to prevent a serious injustice. See *Minot* v. *Minot,* 319 Mass. 253, 257–258.

is a usual equity power. See *Rigs* v. *Sokol,* 318 Mass. 337, 343–344; *Forte* v. *Caruso,* 336 Mass. 476, 483; Restatement: Contracts, § 372; Williston, Contracts (Rev. ed.) § 1441. See also *Morad* v. *Silva,* 331 Mass. 94, 98–100; *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 565–566. The holder of an enforceable option is entitled to injunctive protection against conveyance to a bona fide purchaser, which may render performance impossible. See Corbin, Contracts, §§ 43, 272, 418; Williston, Contracts (Rev. ed.) § 936.

Tucker was not required to wait until the date for conveyance before seeking protection against such a further conveyance by Miss Gleken (a transferee with notice of the option) and specific performance by her and Connors. Bringing this bill was an election to exercise the option (see *Nichols* v. *Sanborn,* 320 Mass. 436, 438) which Tucker also exercised about the same time by written notice. Upon the exercise of the option, Tucker became entitled to a decree directing Connors and Miss Gleken to carry out the contract created by exercising the option in accordance with its provisions and at the time set for performance. She in effect then held the "legal title [to the locus] subject to an equitable obligation to convey . . . on payment of the purchase money." See *Barrell* v. *Britton,* 244 Mass. 273, 278–279. See also Corbin, Contracts, § 272; Pomeroy, Equity Jurisprudence (5th ed.) §§ 1339–1340; Am. Law of Property, § 11.81.

That actual conveyance was not due when the bill was brought is not fatal to a decree for specific performance. Even if a decree had been entered prior to the date set for conveyance, which would have been November 8, 1958, conditional equitable relief could have been made effective as of the day set for conveyance. The final decree, in fact entered on March 7, 1960, has made specific performance conditional upon payment by Tucker in accordance with the contract. See Restatement: Contracts, §§ 359–360; Corbin, Contracts, §§ 1141, 1143. If the decree is performed, the vendor will not be bound (cf. *Daniels* v. *Newton,* 114 Mass. 530, 533) to any performance in advance of, or other

than, that to which he has agreed, or to any payment of damages in advance of a material breach of contract. See *Gordon* v. *Southgate Park Corp.* 341 Mass. 534, 537. The grounds for relief in equity sufficiently existed at the time the bill was brought or arose upon the bringing of the bill. Cf. *Delorafano* v. *Delafano,* 333 Mass. 684, 687–688 (where the event giving rise to liability to perform had not taken place).

Tucker was not obliged to tender performance before suit. In the circumstances he was excused from taking action to be ready to make immediate tender, for the master could reasonably conclude that Connors by his conveyance in effect had repudiated any obligation to Tucker and would not convey to him unless a court compelled him to do so. See *Nichols* v. *Sanborn,* 320 Mass. 436, 438; *Leigh* v. *Rule,* 331 Mass. 664, 668–669; *Mahoney* v. *Beebe,* 334 Mass. 165, 168–169. See also *Hazen* v. *Warwick,* 256 Mass. 302, 307–308; Pomeroy, Equity Jurisprudence (5th ed.) § 1407a. Cf. *Siegel* v. *Shaw,* 337 Mass. 170, 174–175; *Bruni* v. *Andre,* 339 Mass. 708, 711–712. Tucker should have alleged in his bill his ability and willingness to pay the purchase price, but this allegation, if not entirely excused by Connors's action showing that tender would be futile, can but need not be added now by amendment. Connors's and Miss Gleken's interests in this respect are adequately protected by the conditional form of the final decree, which requires conveyance only upon payment of the price.

4. It is argued that Kourafas, Lord, and Waldman should have been joined as parties. Although they properly could have been joined, we see no necessity for such joinder. They were not indispensable parties in view of the relief sought by Tucker. Miss Gleken and Central, respectively record holders of the equity and of the second and the third mortgages, were parties. The master's conclusion that Miss Gleken individually had notice of Tucker's option through Waldman was justified by the subsidiary findings that Mr. Brown acted for Central of which Waldman was treasurer, that Waldman negotiated with

Lord, and that Miss Gleken was represented at the registry of deeds by Waldman and was clerk of Central. If Miss Gleken was in fact a "straw" (see *Kennedy* v. *Innis,* 339 Mass. 195, 200) or a fiduciary under a secret trust for Central, Kourafas, Lord and Waldman, or any one or more of them, there appears to be no respect in which her substantive interests were opposed to theirs. As fiduciary she would adequately represent them for purposes of this suit. See *Gulda* v. *Second Natl. Bank,* 323 Mass. 100, 103; *Claflin, petitioner,* 336 Mass. 578, 581.

5. It is not clear that the final decree adequately binds Central to coöperate with Miss Gleken in making conveyance to Tucker, free of encumbrances, including arranging for a discharge of the second mortgage now held by Central. Accordingly, we think that the final decree should be modified by directing Central to discharge this second mortgage, or to transfer it to Miss Gleken so that she may cause its discharge of record. The decree should specify the amount which Miss Gleken must pay to Central (if, indeed, she is not "straw," agent, or fiduciary for Central) for this discharge which should not exceed the lesser of (a) the amount paid by Central for the second mortgage, and (b) the amount due thereon. The ascertainment of this amount may require a further hearing. We think also (see *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 566) that the Superior Court should retain jurisdiction until all the transfers have been completed, so that it may bring about any equitable adjustments in, or supplements to, the relief granted to Tucker which may prove to be necessary by reason of the existence of the first mortgage or otherwise.

6. The interlocutory decree and the final decree, as modified in accordance with the preceding section (5) of this opinion, are affirmed. Tucker is to have costs of this appeal from Miss Gleken.

*So ordered.*