Spina, J.
This matter is before the Court on Plaintiffs Motion for Partial Summary Judgment, and on Defendant Deep’s Motion for Summary Judgment. The Plaintiff seeks a partial summary judgment declaring that it is entitled to a right of first refusal/option to purchase a mobile home park in accordance with the provisions of G.L. Ch. 140, Sec. 32R, together with certain procedural rights afforded by that law. Defendant Deep obliquely seeks summary judgment declaring that Plaintiff lacks standing to maintain this action, that Plaintiff has failed in its proof, and that G.L. Ch. 140, Sec. 32Ris unconstitutional. The following facts are not in dispute.
G.L. Ch. 140, Sec. 32R was added by St. 1993, c. 145. That law, which contains an emergency preamble, was signed into law by the governor on August 13, 1993, and creates a right of first refusal in favor of tenants of manufactured housing communities, formerly known as mobile home parks.
On October 9, 1993 Defendant Elizabeth Zewinski (Zewinski), owner of land in Greenfield, Massachusetts used as a mobile home park (the park), entered into a purchase and sale agreement with Defendant Deep whereby Zewinski agreed to sell the park to Deep and Deep agreed to purchase the park for the sum of *301 $600,000. Zewinski had listed the property for sale in July, 1993.
On December 13, 1993 Zewinski conveyed the park to Defendant Michael A. Deep, Trustee of Greenfield Mobile Home Park Realty Trust (Trust) for $600,000. Neither Zewinski’s tenants, the Attorney General, the Secretary of Communities and Development, or the Greenfield Board of Health was notified of Zewinski’s intent to sell the park, or the fact of sale, until December 14, 1993. The tenants received a letter dated December 13, 1993 sent by Deep introducing the Trust as the new owner of the park, and further offering on behalf of his insurance agency to write mobile home insurance and automobile insurance for them at substantial savings.
On January 20, 1994 counsel for 55 of the park’s 66 tenants sent a letter to Deep and the Trust demanding information as to the terms of sale of the park, and further demanded that Deep and the Trust actively participate to sell the park to those tenants, all pursuant to G.L. Ch. 140, Sec. 32R. The Trust refused to recognize the tenant group.
Suit was commenced in Franklin County Superior Court on May 11, 1994 by the group of 55 tenants under the name Greenfield Country Estates Tenants Association, an unincorporated association whose members’ names and addresses were attached to and incorporated into the complaint. The group subsequently formed a non-profit corporation, the Plaintiff, on or about May 21, 1994 and the individual members executed assignments of their interest in the subject matter of this action to the Plaintiff. The Plaintiff was substituted for the unincorporated association as plaintiff in this action.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “]T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 297, 209 (1989).
A. Factual Issues
Deep has raised two factual issues, not by counter affidavit, but by motion to strike affidavits filed in support of plaintiffs motion for partial summary judgment. He contends that the affidavits in question are not made by persons with sufficient competence, that is, that the subject matter of those affidavits requires expert testimony. The subjects in question involve the meaning of the terms “manufactured home” as defined in G.L. Ch. 140, Sec. 32Q, and “manufactured housing community” (MHC) as defined in G.L. Ch. 140, Sec. 32F.
(1) Manufactured Home (mobile home)
The six tenant affidavits to which Deep objects each contain a statement of the size of the respective tenant’s mobile home, together with a statement describing a “Data Plate” affixed to that tenant’s mobile home. Each “Data Plate” is said to state that the mobile home to which it is affixed was “built in conformance to the National Manufactured Home Construction and Safety Standards.” Deep argues that those affidavits are not competent and that expert testimony/affidavits are required to prove that any particular manufactured home meets the National Manufactured Home Construction and Safely Standards (Construction Standards).
The term “manufactured home” is defined in Sec. 32Q as “a structure, built in conformance to the National Manufactured Home Construction and Safety Standards ...” Those standards are published in Chapter XX of Title 24 CFR (Revised as of April 1, 1994). Current federal regulations require each manufactured home to bear a “data plate” containing the statement:
This manufactured home is designed to comply with the Federal Manufactured Home Construction and Safety Standards in force at the time of manufacture. 24 CFR §3280.5(c).
The term “manufactured home” replaced the term “mobile home” in Sec. 32Q as a result of enactment of St. 1991, c.481, s.19. That same enactment also redesignated “mobile home park” to “manufactured housing community” as used in Sec. 32F and elsewhere in the statute (Secs. 32A to 32S). Predecessor regulations appearing in CFR had been similarly re-designated, but by 1980. See 42 U.S.C. Secs. 3535(d), 5403; Pub. L. 96-399. See also 40FR 58752 (1975), 42 FR 960 (1-4-77), and 44 FR 20679 (4-6-79). The federal law is pre-emptive as to the term “manufactured home.” See 42 USC Sec. 5403(d).
If Deep is correct and expert testimony is required to establish that a particular mobile home is a “man *302 ufactured home” within the meaning of Sec. 32Q, then a mobile home owner would be put to a level of expense that would virtually place the protections of the statutory scheme out of reach of the very people the statute was designed to protect: the poor and people of modest means. The Construction Standards set forth in Chapter XX of Title 24 U.S.C. are so voluminous, complex, and involve so many different areas of expertise that it can be safely determined that no mobile home owner could reasonably be expected to meet the proof Deep suggests.
On the other hand, some proof is required that a particular mobile home was built according to the Construction Standards in order to qualify as a “manufactured home.” The “Data Plate” was intended to serve this purpose. It should be sufficient to authenticate a manufactured home as having been constructed in accordance with the Construction Standards. Any opponent of such use of a “Data Plate” would be free to introduce evidence or offer a counter affidavit suggesting a structure was not built in accordance with the Construction Standards. This approach offers a practical solution to the issue raised by Deep, and places the burden, more appropriately, on the opponent of the “Data Plate.” The “Data Plate” was probably meant to be used in this way, and was incorporated accordingly at 24 CFR §3280.5(c). Proposed Rule 902(7) of the Massachusetts Rules of Evidence contemplate such use of a “Data Plate.” See also Doyle v. Continental Baking Co., 262 Mass. 516 (1928).
Deep has offered no affidavit contradicting the existence of the 6 Data Plates or the assertions contained in those Data Plates. There has been no affidavit suggesting the 6 manufactured homes bearing those “Data Plates” are not “manufactured homes.” For purposes of the motions for summary judgment, there is no genuine issue of material fact as to the 6 “manufactured homes” described in the affidavits filed in support of plaintiffs motion. The uncontroverted evidence is that there are 6 “manufactured homes,” at least, on the property which is the subject of this action.
(2) Manufactured Housing Community (mobile home park)
Deep argues that there is no evidence that the property in question is a “manufactured housing community.” This argument depends upon success with his motion to strike the affidavits of the six tenants regarding the “Data Plate” on their respective “manufactured homes,” and with his motion to strike the affidavit of Shirley Streeter, Administrative Assistant to the Greenfield Board of Health. He has not prevailed on the “Data Plate” issue, and therefore the property must be deemed a “manufactured housing community” because there are at least 3 “manufactured homes” located thereon, within the meaning of G.L. Ch. 140, Secs. 32F, 32Q.
With respect to the Streeter affidavit, Deep contends that it should be disregarded because it contains no statement to the effect that either Deep or the Trust was issued a license to operate a Manufactured Housing Community under G.L. Ch. 140, Sec. 32B. A copy of Deep’s application for a license is attached to Streeter’s affidavit. It is on a form providing for an “original license/renewal license to operate recreational camps, overnight camps or cabins, motels and trailer coach parks.” Deep applied for a license on that form as the “new owner” of “Brownie’s Mobile Home Park.” The license was issued, but there is nothing which expressly states that the license was for a “manufactured housing community” under G.L. Ch. 140, Sec. 32B. Sec. 32B was amended in 1991, substituting the term “manufactured housing communities” for “mobile home parks.” The Streeter affidavit contains uncontradicted admissions made by Deep to the effect that he sought renewal of a license to maintain and operate a “mobile home park” on December 13, 1993. It is clear from arguments of counsel that none of the parties or former parties to this litigation was aware on December 13, 1993 that G.L. Ch. 140, Secs. 32 A, B had been amended in 1991 redesignating the terminology of the statute or that G.L. Ch. 140, Sec. 32R had been amended August 13, 1993. When Deep applied for the renewal of a license it was for a mobile home park. It is reasonable to infer, and in all likelihood an inescapable inference, that Deep believed the “mobile home park” required a license, and that what was being licensed was in fact a “mobile home park,” currently known as a “manufactured housing community.” There was at the time no other law in Massachusetts dealing with the operation of mobile home parks or manufactured housing communities which required licensure. G. L. Ch. 140, Sec. 32A forbids the unlicensed operation of a “manufactured housing community.” That section, before its amendment by St. 1991, c. 481, §15 (effective April 1, 1992), forbade the unlicensed operation of a “mobile home park.” The editorial caption to Sec. 32A, though unofficial, still refers to the text as affecting “mobile home parks.”
Additionally, defendant Zewinski filed an affidavit in this case stating that she sold the mobile home park to Deep on December 13, 1993 and was unaware of the changes in “the mobile home park law (General Laws, Chapter 140, §§32F — 32S)” at the time. She further stated therein that she “would have complied with the law if [she] had been aware of it.” In Zewinski’s opinion she operated a mobile home park subject to the provisions of G.L. Ch. 140, Secs. 32F-32S which she sold to Deep on December 13, 1993.
In their Answer to the Complaint (Par. 18), Deep and the Trust admitted sending the letter attached to the Complaint as Exhibit 4 to residents of the trailer park. That letter, dated December 13, 1993 and signed by Deep as trustee of the Trust, introduced the Trust as the new owner of Brownie’s Mobile Home Park. He *303 offered to write insurance on the “mobile homes” at “substantial savings.” This letter bore the same date as Deep’s application to the Greenfield Health Department for renewal of a license for Brownie’s Mobile Home Park December 13, 1993. Given all the aforesaid uncontradicted information presented in the affidavits and pleadings filed in this case it is reasonable to infer that Deep had applied to the Greenfield Board of Health for a license to operate a “manufactured housing community,” formerly known as a mobile home park. It is also reasonable to infer from the aforesaid affidavits and pleadings that the Trust purchased a “manufactured housing community” from Zewinski. Notwithstanding a uniformity of reference to the business as a “mobile home park,” as it was formerly known, and notwithstanding the absence of any copy of the rules or regulations of the “manufactured housing community” filed with the Board of Health (noted by Deep to be something required by Sec. 32B as a prerequisite to issuance of a license to operate such communities), this is a manufactured housing community. Deep is correct in stating that copies of such rules or regulations must be filed with the license application, but the absence of such filing does not invalidate the license or signify that the license is not for operation of a manufactured housing community. Any absence of filing means only that there are no rules or regulations (see Sec. 32L(1), or that the rules or regulations in existence are rendered invalid for failure to file. (See Sec. 32L(7)).
I conclude that there is no legitimate question of material fact presented by the affidavits and the pleadings for purposes of the cross motions for summary judgment. The subject of this action is a “manufactured housing community” within the meaning of G.L. Ch. 140, Sec. 32F. There were at least three (3) “manufactured homes” located thereon, within the meaning of G.L. Ch. 140, Secs. 32F, 32Q. Zewinski agreed on October 9, 1993 to sell the manufactured housing community, known by them as a “mobile home park,” to Deep. Deep purchased it as trustee of the Trust on December 13, 1993.
B. Right of First Refusal
G.L. Ch. 140, Sec. 32R creates a right of first refusal in favor of residents of a manufactured housing community (MHC) whenever the owner of the MHC intends to sell or lease all or any part of the land on which the MHC is located. Such owner must give notice to each resident of the MHC by certified mail, within 14 days after any such property is first listed for sale or lease. Notices must also be sent simultaneously to the Attorney General, the Secretary of Communities and Development, and the local board of health. Such notices must include a statement of tenants’ rights under Sec. 32R, and must be sent not less than 45 days before the sale or lease occurs. G.L. Ch. 140, Sec. 32R(a).
If more than 50% of the MHC tenants (or a corporation representing more than 50% of the MHC tenants) notify the MHC owner or operator in writing of their desire to receive information relating to any proposed sale or lease, then such owner or operator must give every resident of the MHC notice by certified mail
of any bona fide offer for such sale or lease that the owner intends to accept . . . [including] . . . the price, calculated as a single lump sum amount which reflects the present value of any installment payments offered and of any promissory notes offered in lieu of cash payment. .. and the terms and conditions of the offer. G.L. Ch. 140, Sec. 32R(b).
(No association of tenants is required if a proposed sale would result in a change of use or discontinuance of the MHC, in which case notice to all tenants, the Attorney General, the Secretary of Communities and Development, and the local board of health is obligatory. Sec. 32R(b)).
Any unincorporated group of at least 51% of the manufactured home owners (or the corporation representing such owners) entitled to notice under Section 32R(b) “shall have the right to purchase . . . the said community for purposes of continuing such use thereof, provided it ”(1) shows the owner that at least 51% of the home owners have agreed to proceed with such purchase; (2) tenders a purchase and sale agreement with substantially equivalent terms as made by the third-party offeror, within 45 days of receipt of the notice described in Sec. 32R(b); (3) obtains any necessary mortgage loan commitment within an additional 90-days after the NHC owner executes such purchase and sale agreement; and (4) purchases the MHC within a further 90 days after the expiration of the 90 day period described in part (3) above. G.L. Ch. 140, Sec. 32R(c).
The right of first refusal created by Sec. 32R(c) “shall inure to the residents for the time periods . . . provided [under Sec. 32R], beginning on the date of notice to the residents under [Sec. 32R(b)].” G.L. Ch. 140, Sec. 32R(d).
None of the aforesaid notices was ever given in this case, starting with the first required notice under Sec. 32R(a). Zewinski never gave notice of her intention to sell her MHC. Although she listed the property in July, 1993, before Sec. 32R became effective, she became obligated to notify tenants of such intention and their rights under Sec. 32R as of August 13, 1993, the effective date of the new law. She had not entered into a purchase and sale agreement as of August 13, 1993, and there is no evidence she had received any offers as of that date. The tenants had the right to prepare themselves to respond to any offer to purchase by forming an association therefore and to notify Zewinski accordingly, pursuant to Sec. 32R(b). They were entitled to be notified “at least forty-five days before the sale” occurred. G.L. Ch. 140, Sec. 32(R)(a). They were never notified until after the sale occurred, and were merely informed of the fact of sale.
*304 On January 20, 1994 counsel for 83% of the tenants notified Deep and the Trust in writing of their desire to learn the terms of the sale, and demanded that they actively participate in selling the mobile home park to those tenants. This is the type of tenant notice that the legislature contemplated would trigger the right of first refusal in this type of case (no resulting change of use or discontinuance). That right of first refusal “inure[s] to the residents for the time periods . . . provided [by Sec. 32R(c)], beginning on the date of notice [of offer] to the residents under paragraph (b) [of Sec. 32R].” G.L. Ch. 140, Sec. 32R(d). The tenants have never received notice of the offer. They have through investigation at the Registry of Deeds learned of the amount of the purchase price and the recorded mortgage, but they are entitled to know the terms of the offer and base their own offer on that figure rather than the actual sale price.
Deep argues that the tenants’ right of first refusal remained inchoate because they never notified Zewinski in advance of sale requesting information about the sale. This reading of the statute implies that a “rolling” right-to-know was created, and suggests that the best way for tenants to protect themselves is to form a majority association as soon as possible to inform the MHC owner of their desire to know the terms of any offer, even if the owner has no present intention to sell. Such a reading presupposes tenant activity precipitated by some generalized threshold of fear. The statute was not meant to be construed in that manner. The statute holds a more realistic view of people, and indeed takes a more practical and business-like approach.
Sec. 32R(a), in its first sentence, provides that “[a] manufactured housing community owner shall give notice to each resident of the manufactured housing community of any intention to sell or lease all or part of the land on which the community is located for any purpose.” (Emphasis added.) The statute continues, further providing that if the owner lists the property for sale, notice thereof must be sent to the tenants within 14 days thereof. But “[s]uch notice shall be mailed by certified mail ... in any event, at least forty-five days before the sale . . . occurs”. (Emphasis added.) Sec. 32R(a). Such notice of intent is not limited to an intent manifested by listing with a broker. If the intent is formulated upon receipt of and as a result of an unsolicited offer, then the tenants are entitled to notice of such intent, pursuant to Sec. 32R(a). There is absolutely no reason to believe the legislature intended that tenants be notified only when the owner lists the property. The legislature expressly manifested its intent that MHC tenants be notified of any intention by the MHC owner to sell at least 45 days before sale.
The statute further provides, at Sec. 32R(b), that if at least 51% of the tenants notify the owner “in writing, that such persons desire to receive information relating to the proposed sale," then notice of any offer must be provided. (Emphasis added.) Sec. 15 32R(b). The statute contemplates that the tenants will rally around a present or imminent intention to sell and that they will desire information about any specific offer made in response to a publicly announced intention to sell (e.g., a listing), or a response to an unsolicited offer. The statute contemplates an orderly and rational response to a proposed commercial transaction, not a rolling, generalized fear to be assuaged by permitting a majority of tenants to ask for notification of sale when none is contemplated. The clear language of the statute permits a tenant association to be formed around a “proposed sale.” The integrity of the tenant group is only likely to be sustained when convention arises from an imminent sale.
Case law is in accord. In a case involving an oral promise by a landowner to a tenant giving the tenant an unspecific “right of first refusal,” the Supreme Judicial Court held that the term “right of first refusal”
is designed to afford the holder protection against a sale to others. That protection is only effective if, in the event the owner has elected to sell the property, the holder, who is usually a tenant and frequently, as here, has made substantial improvements, has a realistic opportunity to meet the offer the owner has elected to accept. Thus, we hold that a person in the position of the plaintiff who is a tenant and has improved the property may properly be deemed to have exercised his right of first refusal only when the owner has decided to accept a third person’s outstanding and enforceable offer and the holder of the right has been informed of the details of that offer and has had a reasonable time to meet it.
Roy v. George W. Greene, Inc., 404 Mass. 67, 71 (1989). The case at bar is even more compelling because the mechanics of the right of first refusal are set forth in Sec. 32R with a high degree of particularity.
In addition, the statutory construction advanced by Deep would permit owners (and third-party buyers) to thwart the purposes of Sec. 32R by simply never notifying tenants of an intention to sell or an impending sale and then, after sale, claim the tenants have no rights because they never asked to be informed under Sec. 32R(b). The right of a majority group of tenants to request information under Sec. 32R(b) is not triggered until all tenants receive the notice under Sec. 32R(a) of an intention to sell occasioned by a listing of the property or by receipt of an unsolicited offer to purchase. Deep’s reading of Sec. 32R(b) relegates Sec. 32R(a) to the heap of surplusage, and does not comport with rules of statutory construction. See Bolster v. Commissioner of Corporations and Taxation, 319 Mass. 81 (1946).
The tenants were entitled to notification of sale no later than October 29, 1993, 45 days before the sale. They were probably entitled to also receive notice of Zewinski’s intention to sell on August 13, 1993, the date of enactment, as she had listed the property in July, 1993. They are entitled to such notice because *305 the statute, G.L. Ch. 140, Sec. 32R expressly so provides as an adjunct to their statutory right of first refusal.
C.REMEDY
Deep contends that summary judgment should be denied because Sec. 32R does not provide a remedy and an evidentiary hearing is required in order to properly address the relative equities of the parties before equitable relief should be afforded. Deep offers no affidavit which might suggest the existence of such a factual dispute, and an equitable action for specific performance of an option to purchase is oriented to the rem, not the condition of the parties.
The tenants’ “right of first refusal ripened into an option to purchase at the stated price” and upon the stated terms set forth in the purchase and sale agreement between Zewinski and Deep. Mucci v. Brockton Bocee Club, Inc., 19 Mass.App.Ct. 155, 159 (1985). See also Roy v. George W. Greene, Inc., supra, 404 Mass, at p. 69. The triggering device was the listing with the broker, or in this case, the continued listing as of the effective date of the statute: August 13, 1993. See Mucci, supra.
The holder of an option to purchase is entitled to specific performance as to the optionor, and also to injunctive relief to prevent a sale to a bona fide purchaser which might render performance under the option otherwise impossible. See Tucker v. Connors, 342 Mass. 376, 382 (1961). In cases involving sales to third parties “who took with actual or constructive notice of the ’’right of first refusal/option to purchase, the optionee may obtain specific performance against such third party." Tucker v. Connors, supra, at p. 382-83; Parkhurst v. Maynard, 285 Mass. 59, 62-63 (1933); Stone v. W.E. Aubuchon Co., 29 Mass.App.Ct. 523, 526 (1990).
The statute creating the right of first refusal was in effect at the time the purchase and sale agreement was executed, and also when title passed. All parties to those transactions, Zewinski, Deep and the Trust are presumed to have knowledge of that law, and therefore constructive knowledge of the right of first refusal. See Haven v. Foster, 9 Pickering 111 (1829). This principle also applies to statutes affecting contracts. See U.S. Drainage & Irrigation Co. v. City of Medford, 225 Mass. 467, 472 (1917); Wallace v. Boston Rent Board, 12 Mass.App.Ct. 13 (1981). It does not matter that the option was unrecorded, as the defendants had constructive knowledge of its existence. Parkhurst v. Maynard, supra. Deep and the Trust were not bona fide purchasers of the park, and took subject to the tenants’ right of first refusal/option to purchase. The tenants are entitled to obtain specific performance as to both Zewinski on the one hand, or alternatively, Deep and the Trust on the other hand. Tucker v. Connors, supra; Stone v. W.E. Aubuchon Co., supra. Sec. 32L(7) provides that failure to comply with the provisions of Sec. 32R is a violation of G.L. Ch. 93A, Sec. 2(a). Ch. 93A permits a wide array of relief, including specific performance.
Finally, Deep’s suggestion that Sec. 32R creates a remedy (something he only acknowledges hypothetically, for purposes of argument) other than the common law remedy of specific performance is misguided. He conjures vitality for this position from the use of two different phrases in Sec. 32R: “right to purchase” (Sec. 32R(c)), and “right of first refusal” (Sec. 32R(d)). The plain import is that the phrases are 2 forms of the same concept: the “right of first refusal” is a “right to purchase” on the same terms as someone who made an enforceable offer that was accepted by the park’s owner.
D.STANDING
Deep contends that the Plaintiff does not have standing to maintain this action because it did not exist at the time of conveyance from Zewinski to Deep. Deep further argues that since tenants may only assign their rights under Sec. 32R to the assignees expressly enumerated in Sec. 32R(c), and that a corporation such as Plaintiff is not included thereunder, then the tenants could not properly assign their rights to the Plaintiff for purposes of bringing this action. The short answer is that the tenants’ assignment of their rights under Sec. 32R to the Plaintiff is superfluous. The Plaintiff is merely a corporate form the tenants are entitled to assume pursuant to Sec. 32R(b) to simplify their dealings with Zewinski, Deep, the Trust, and any lending institution. The tenants are entitled to proceed with this action in corporate form, and have done so.
The tenants are seeking to enforce an interest in land afforded to them by G.L. Ch. 140, Sec. 32R. They are aggrieved by the defendants’ involvement in a sale of that land without having afforded them an opportunity to avail themselves of the statútory procedures to perfect that interest. They have articulated an injury “within the area of concern of the statute or regulatory scheme under which the injurious action has occurred,” and as such have standing to maintain this action either as an unincorporated association or through their corporation, the named plaintiff. Beard Motors, Inc. v. Toyota Motor Distributors, Inc., 395 Mass. 428, 432 (1985), quoting Mass. Assn, of Indep. Ins. Agents & Brokers v. Commissioner of Insurance, 373 Mass. 290, 293 (1977); Town of Holden v. Division of Water Pollution Control, 6 Mass.App.Ct. 423 (1978).
E.CONSTITUTIONALITY OF SEC. 32R
Deep argues that Sec. 32R “has gone ‘too far’ and, thus, becomes [a taking and] an invalid exercise of governmental power.” (Deep’s Motion/Memorandum dated September 23, 1994, p. 9 — docket entry #46.) He then embarks upon a learned analysis of recent decisions of the United States Supreme Court. However, there is no affidavit anywhere that suggests that Deep has been harmed or indeed has standing to question the constitutionality of Sec. 32R. Deep closed *306 his argument on this issue by requesting the “opportunity to seek appropriate expert assistance and develop the factual premises upon which expert opinion that the nexus between the statute and the public purpose for which it was enacted is not ‘substantial’ might be premised.” (Id. at p. 15.) That time has passed and some affidavit is required at this time to justify denial (or allowance) of a motion for summary judgment. Zewinski has not raised the constitutionality of Section 32R, and she is in a better position to do so, as it is her (former) property the Plaintiff seeks to own. Deep and the Trust acquired Zewinskits property subject to Plaintiffs right of first refusal/option to purchase. Had the tenants been notified before sale, as they were entitled, they would have been in a position to enjoin the sale and in all likelihood been successful in obtaining such an injunction. Deep and the Trust would not have become owners, and would not be in the predicament that now confronts them. It was only Zewinski’s and Deep’s/the Trust’s failure to timely acknowledge the tenant’s right of first refusal that is the source of their common difficulty. They brought this upon themselves.
If the tenants had been allowed to pursue their statutory rights, they either would have purchased the park from Zewinski under the same terms as Deep had offered, or Deep would have done so because of their default. In either case, Zewinski would have acquired exactly what she had bargained for and Deep and the Trust would have had to yield to the tenants’ superior interest under a traditional legal transaction; or the tenants would have “taken a by” and thereby allowed Deep to proceed to purchase.
Even if the effects of Section 32R amount to a “taking,” no one is deprived of just compensation. The beaufy of Section 32R is its practicability and traditional approach in accomplishing a public purpose on the coattails of market driven negotiations. The owner should be content to have 2 potential buyers, and the third-party offeror enters negotiations with the (constructive) knowledge that its efforts at worst may be pre-empted. Deep and the Trust had constructive notice of the tenants’ Right of First Refusal when they entered into negotiations with Zewinski. They have suffered no harm, much less harm of a constitutional proportion. There has been no “taking.” See Yee v. Escondido, 112 S.Ct. 1522, 1528 (1992); Minnesota v. Block, 660 F.2d 1240, 1255-56 (8th Cir. 1981); Steinberg v. Cambridge, 413 Mass. 736, 741 (1992), cert. den. 113 S.Ct. 2338 (1993).
The simple use of the right of first refusal is a legitimate exercise of the police power to “substantially advance legitimate state interests.” Agins v. Tiburón, 447 U.S. 225, 226 (1980). The legislature has recognized the plight of mobile home owners, many of whom Eire low income persons or pensioners on fixed incomes who are at the mercy of their landlords, and unlike apartment dwellers lack the flexibility to relocate if they are dissatisfied with their living conditions. See the Governor’s Declaration of Emergency, August 13, 1993, to the General Court, with respect to St. 1993, c. 145. The Supreme Judicial Court similarly has recognized the plight of mobile home owners. Commonwealth v. Gustafsson, 370 Mass. 181 (1976); Commonwealth v. Decotis, 366 Mass. 234, 238 (1974).
F. CONCLUSION
For the reasons set forth herein, the Plaintiffs Motion for Partial Summary Judgment is ALLOWED; and Deep’s Motion for Summary Judgment is DENIED. It is hereby ORDERED that a partial judgment enter declaring that Plaintiff is entitled to purchase property in Greenfield, Massachusetts, formerly owned and operated by defendant Zewinski as a mobile home park, on substantially the same terms and conditions as are contained in a purchase and sale agreement regarding said property dated October 9, 1993 between defendants Zewinski and Deep. It is further declared that the Plaintiff is entitled to receive notice of the terms and conditions of said purchase and sale agreement from defendants Zewinski and Deep, including all the information described in G.L. Ch. 140, Sec. 32R(b), and that upon Plaintiffs compliance with the terms of G.L, Ch. 140, Sec. 32R(b),(c), it shall be entitled to purchase said property from the current owner as aforesaid. Absent voluntary compliance with this judgment, the plaintiff will be entitled to an Order of Specific Performance therefore to effectuate the purpose of G.L. Ch. 140, Sec. 32R and this Partial Judgment.